José G. Salgado, demandante y apelado, *v.* Comisión Hípica Insular, compuesta por Frank J. Richardson, Enrique Gatell, Pedro Juan Barbosa, Eduardo Méndez y José Dávila Ricci, demandada y apelante.

No. 6556.—*Sometido:* Abril 25, 1935. *Resuelto:* Enero 24, 1936.

*Diego O. Marrero,* abogado de la apelante; *J. Valldejuli Rodríguez,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

José G. Salgado, en su carácter de dueño de caballos de carreras, radicó una petición de *injunction* en la Corte de Distrito de San Juan con el propósito de impedir que la Comisión Hípica Insular pusiese en vigor un artículo de su reglamento, imponiendo como condición precedente para poder reclamar un caballo antes de efectuarse una carrera el pago de $5 por cada solicitud.

Alega el peticionario que estas carreras denominadas de reclamo han sido debidamente autorizadas por la Comisión Hípica Insular de Puerto Rico, y que todos los caballos que figuran en ellas pueden ser reclamados, esto es, adquiridos por cualquier dueño de caballo debidamente autorizado por dicha comisión, siempre y cuando se presente al juez de reclamo del hipódromo correspondiente antes de las carreras un boleto ofreciendo la cantidad de dinero especificada en el programa de carreras como precio del reclamo. Añade el peticionario que la Comisión Hípica Insular, sin autoridad alguna, impuso un derecho de $5 por cada boleto que se presentase, ordenando que no fuese considerado ningún boleto

por dicho juez que no viniese acompañado de dicho derecho de $5.

En apoyo de esta afirmación se alega que la referida comisión no está autorizada por ley alguna para imponer derechos de esta clase y que los únicos derechos que puede cobrar son los especificados en el artículo 28 de la Ley núm. 11, aprobada por la Asamblea Legislativa de Puerto Rico en 8 de abril de 1932 (Leyes 1931–1932, pág. 193).

La Corte de Distrito de San Juan declaró nulo el artículo del reglamento que impone un derecho de $5 como condición precedente para el reclamo de un caballo antes de efectuarse una carrera, y decretó el *injunction* solicitado.

■■ Se alega que es erróneo el pronunciamiento de la corte inferior declarando que la facultad concedida por el artículo 5 de la Ley núm. 11 de 1932, para prescribir las reglas y condiciones por las cuales debe regirse la celebración de carreras de caballos en Puerto Rico, no se extiende a imponer a los dueños otros derechos que los determinados por el artículo 28 de dicha ley. Opina la corte inferior que el referido artículo 28 de la ley anteriormente citada establece los derechos que debe cobrar la comisión y que al hacerlo así la Legislatura demostró su intención de excluir cualquier otro derecho que no esté especificado en dicho artículo, de acuerdo con la máxima *expressio unius est exclusio alterius*. Arguye la apelante que esta máxima no es absoluta y que tiene sus excepciones, que su fin primordial es determinar la intención legislativa y que, cuando esa intención es manifiesta, no debe utilizarse esa máxima como medio de interpretación, si su aplicación está en pugna con el pensamiento del legislador. Estamos conformes con este criterio, que aparece sostenido en *Springer* v. *Govt. of Philippine Islands,* 277 U. S. 189, 72 L. Ed. 845, y otros casos citados por la apelante. No puede negarse, sin embargo, que cuando en una ley se conceden específicamente ciertas facultades y no se mencionan otras de la misma categoría, existe un fuerte indicio de la intención legislativa en el sentido de no incluir nada más que lo ex-.

presado.    Para llegar a una conclusión contraria es necesario que la misma ley demuestre que la intención del legislador no fué limitar las facultades concedidas a las estrictamente enumeradas.

El artículo 5 de la Ley núm. 11 de 1932 dice así:

"La Comisión Hípica Insular queda facultada para regularizar todo lo concerniente al deporte hípico y a tal objeto tendrá facultad para prescribir las reglas y condiciones por las cuales deberá regirse la celebración de carreras de caballos en Puerto Rico; para reglamentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas en las bancas alemanas y *pools;* y para prescribir por reglamento los requisitos que deberán llenar las personas que desearen obtener y obtengan de la Comisión licencias de hipódromos, dueños de caballos, *jockeys, trainers* o cuadreros.

"La Comisión Hípica deberá seguir en sus investigaciones y 'actuaciones los procedimientos señalados en la ley a las cortes de justicia para la tramitación y despacho de sus asuntos.

"La Comisión Hípica Insular, en el ejercicio de sus deberes, y sus miembros cuando actúen en su representación quedan autorizados para citar testigos, tomar juramentos y declaraciones y obligar la comparecencia de testigos y la presentación de libros, cartas, documentos, papeles, expedientes y todos los demás datos que se consideraren esenciales para un completo conocimiento del asunto objeto de investigación en relación con el deporte hípico.

"Todas estas facultades deberán prescribirse en un reglamento, el cual deberá ser aprobado por el Gobernador de Puerto Rico, y una vez que dicho funcionario le imparta su aprobación, tendrá fuerza obligatoria.    La Asamblea Legislativa se reserva la facultad de revisar y revocar dicho reglamento en todo o en parte cuando a bien lo tuviere."    (Leyes de ese año, pág. 197.)

El artículo 28 de la misma ley (pág. 211) dice que "la Comisión Hípica Insular cobrará los siguientes derechos:

"1. Por cada licencia de hipódromo, por año_____ $300
"2. Por cada licencia de dueño, o establo, por año_____    20
"3. Por cada licencia de *jockey*, por año_____    10
"4. Por cada licencia de *trainer* o cuadrero, por año_____    2
"5. Por cada inscripción de caballo en el *studbook*_____    10
"6. Por cada inscripción de potro, en el Registro de potros    5
"7. Por la anotación de cada cambio de nombre de un caballo    5

"8. Por la anotación de cada traspaso o venta de un caballo 5

"9. Por la primera inspección y marca de un potro_____ 20

"10. Por cada copia certificada, de una inscripción_____ 1

"11. Por cada copia certificada, veinte (20) centavos por cada
  cien palabras y por la certificación_____ 1."

El artículo 5, anteriormente transcrito, no puede interpretarse en el sentido de conceder a la comisión poderes para cobrar derechos no incluídos en el artículo 28, que enumera detalladamente los casos en que la comisión puede cobrarlos. Sostiene la apelante que el artículo 30 de la misma ley demuestra que la Comisión Hípica tiene facultades para cobrar otros derechos. Dicho artículo dice así:

"El importe de los derechos a que se refiere el artículo 28 de esta Ley, así como las multas y demás ingresos que recibiere la Comisión ingresarán en los fondos de la Comisión Hípica Insular."

Se hace hincapié en las palabras "y demás ingresos", que, a juicio de la parte apelante, cubre la alegada facultad de la comisión para imponer el derecho impugnado. No estamos conformes. Estas palabras no pueden interpretarse en el sentido de autorizar a la comisión para imponer y cobrar derechos que no surgen de las facultades que le concede la ley. Por "demás ingresos" debe entenderse otros ingresos especificados en dicha ley, como, por ejemplo, el 15 por ciento del total bruto derivado por concepto de los descuentos hechos en las bancas alemanas, *pool* y *subscription fund,* que el artículo 29 concede a la Comisión Hípica Insular.

De acuerdo con el artículo del reglamento impugnado, el dinero que se recaude pasará a un fondo especial, creado por la misma comisión, que se destinará exclusivamente para aumentar los premios en carreras especiales o de trofeos. A nuestro juicio la comisión no tiene facultades ni para el cobro del impuesto ni para la creación del fondo referido. La ley, en su artículo 30, establece un fondo para los ingresos que derive la Comisión Hípica; en su artículo 25 establece ciertos impuestos que deberán cobrarse e ingresar en el Tesoro Insular, y en su artículo 33 dispone que ciertas

cantidades retenidas por la corporación dueña del hipódromo y liquidadas semanalmente a la Comisión Hípica Insular, ingresarán en un fondo especial en el Tesoro de Puerto Rico que se denominará "Fondo Hípico para los Sanatorios."

No se concede a la comisión ningún otro poder para crear nuevos fondos. El fin que persigue el artículo del reglamento impugnado está previsto por el artículo 31, según el cual el dinero para aumentar los premios de las carreras en que se otorguen trofeos o copas, se tomará de los ingresos a que se refiere el artículo 30, depositados en los fondos de la Comisión Hípica Insular.

El segundo motivo de error se basa en que "la corte no resolvió que la regla impugnada no está limitada en su aplicación a los dueños de caballos o de establos, y que por el contrario es de aplicación a todas las personas que deseen presentarse como reclamantes en una carrera de reclamo." El error apuntado no resulta todo lo claro que fuera de desear. Sin embargo, la cuestión planteada, cualquiera que sea, carece de importancia. El hecho de que la aplicación de la regla se limite a los dueños de caballos o se extienda a todos los ciudadanos no tiene relación alguna con la cuestión que se ventila. La regla referida, por amplia o limitada que sea, en cuanto a las personas a que deba aplicarse, no puede conceder a la Comisión Hípica Insular poderes que la Legislatura nunca intentó otorgarle.

Como tercer motivo de error se alega que la corte inferior ha resuelto que la doctrina establecida en el caso de *Douglas Park Jockey Club* v. *Talbott,* 173 Ky. 685, 191 S. W. 474, no es aplicable al presente caso. Este, a nuestro juicio, no puede ser motivo de error. No estamos compelidos a aceptar el criterio sostenido por una corte estadual, porque sus decisiones no son obligatorias para nosotros. Podemos aplicar, y lo hacemos con bastante frecuencia, aquellos principios que a nuestro juicio interpretan correctamente leyes similares o idénticas a las nuestras. Estas decisiones pueden convencernos por el peso de su argumentación y la ló-

gica de sus razonamientos. En cuanto a la decisión de la Corte de Apelaciones de Kentucky, creemos que no resulta de aplicación a la cuestión en controversia. En el caso de Kentucky no hubo imposición de derecho. La Comisión Hípica de dicho estado dispuso, mediante reglamento, que los premios de los hipódromos no debían bajar de cierta cantidad. Allí se trataba exclusivamente de una disposición reglamentaria fijando el mínimum de los premios y no de la imposición de un derecho, que es la cuestión en controversia en el presente caso. Aquí se impugna la validez de un reglamento cuya base es la imposición de un derecho que no aparece autorizado por la ley.

Se alega por último que la corte de distrito erró al no resolver que la regla de que se trata no es una de carácter fiscal, estando comprendida dentro del poder policíaco que ejercita la comisión a virtud de las disposiciones de la ley. No compartimos el criterio de la apelante. Cualquier facultad a base de este principio de *police power* que pueda tener la comisión debe surgir del artículo 5 de la referida ley de 1932. El estatuto, en su artículo 28, fija claramente los casos en que la comisión puede cobrar derechos. En ese artículo no está incluída la facultad de imponer un derecho de $5 para poder reclamar un caballo. El poder policíaco en este caso no puede extenderse más allá de las facultades terminantes de la misma ley.

*Debe confirmarse la sentencia apelada.*