EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ARTURO RODRÍGUEZ MIRANDA, acusado y apelante.

Núm. 5938.—*Sometido:* Abril 1, 1936.  *Resuelto:* Mayo 26, 1936.

*R. Martínez Nadal* y *F. Navarro Ortiz*, abogados del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En uno de los días del mes de abril de 1934, Arturo Rodríguez fué acusado de introducir en Puerto Rico, procedente

de la ciudad de Nueva York, la cantidad de 5,232 libras de café crudo, sin haberse provisto de un certificado expedido por un entomólogo, expresando que dicho café estuviera libre de enfermedades e insectos perjudiciales a las plantas.

La corte inferior declaró sin lugar una excepción perentoria formulada contra la denuncia sobre la base de que los hechos denunciados no constituían delito público. Este es el primer error en que a juicio del acusado incurrió el tribunal inferior.

██ Arguye la defensa que esta ley no puede aplicarse a los hechos denunciados, porque el café no fué importado ni introducido para semilla, y la misma ley dispone en el penúltimo párrafo del artículo 1ro. que sus preceptos no se interpretarán en el sentido de prohibir ni someter a las condiciones establecidas la importación de productos agrícolas para manufacturarlos, molerlos o para fines industriales.

El artículo 1ro. de la Ley núm. 17, de 27 de mayo de 1919 (pág. 131), dice así:

"No se importará en Puerto Rico ningún árbol o planta o cualquiera parte de ellos, o sus semillas, ni hilaza de algodón, suelta o en fardos, sin traer un certificado firmado por un entomólogo del gobierno, o por la persona que tenga la autoridad requerida en el estado o país de donde la importación proceda, expresando que dichos artículos están libres de enfermedades o insectos perjudiciales a las plantas.

"Se exceptúan de la anterior provisión, los artículos siguientes, cuando se importen para consumo doméstico, a saber: Café tostado, cereales, frutas de países no tropicales, legumbres o nueces.

"                                    .

"Se dispone por la presente que esta ley no se interpretará en el sentido de prohibir ni someter a las condiciones anteriormente establecidas la importación de productos agrícolas para manufacturarlos, molerlos, o para fines industriales."

El artículo que se considera infringido es el siguiente:

"Toda persona, razón social, corporación, porteador o agente de la misma, que infringiese o dejase de cumplir cualquiera de las disposiciones de esta ley, o las instrucciones de cualquier inspector de-

bidamente nombrado con arreglo a lo dispuesto por la misma, o que estorbare o intentare estorbar a dicho inspector en el ejercicio de sus funciones, incurrirá en *misdemeanor,* y convicta que fuere, será castigada según dispone el Código Penal.''

No es necesario alegar en la denuncia las excepciones establecidas por la ley. Es al acusado a quien incumbe alegar en su defensa que el acto que se le imputa está cubierto por la excepción.

La denuncia en el presente caso contiene hechos suficientes, desde el momento en que se alega que el acusado introdujo café crudo en la isla sin proveerse del certificado correspondiente. ''Es sabido'', dice la corte inferior, ''que el fruto del café es la semilla, y que ésta puede usarse para fines de reproducción de la planta y también para consumo humano. En uno u otro sentido es siempre semilla.'' La ley prohibe la importación de semillas, sin un certificado donde se diga que las mismas están libres de enfermedades o insectos perjudiciales a las plantas. Del Diccionario de la Real Academia Española tomamos la siguiente definición:

''*Café:* Fruto del cafeto en valla roja; semilla del cafeto.''

Como muy bien dice el Fiscal, el café constituye un alimento, pero hay que someterlo antes a ciertos procesos industriales y convertirlo en bebida, que es como lo usamos, siendo uno de dichos procesos el de la torrefacción. De manera, pues, que *café crudo* no puede tener otra significación que la del grano o semilla del cafeto, que no está preparado para consumo inmediato como alimento, pero sí en condiciones de germinar como semilla en términos generales, y esto es bastante para sostener la bondad de la denuncia.

En el segundo motivo de error se sostiene que la corte *a quo* se equivocó al apreciar la prueba. El tribunal inferior reconoce que la semilla, una vez sometida a ciertos procesos industriales, queda inútil para reproducirse, haciéndose imposible la germinación. El fiscal, argumentando este alegado error relacionado con la apreciación de la prueba, se expresa así:

"Ahora bien, en este caso, resueltas las excepciones perentorias en contra del acusado, la defensa ofreció prueba, y entre otra, la declaración pericial de don Rafael Martínez Nadal como experto en el cultivo, siembra y recolección del café en Puerto Rico; y aceptamos, como así lo aceptó la corte inferior, que el café objeto de esta denuncia carece en absoluto del poder germinativo necesario e inherente en toda semilla que se use para los fines de reproducción, y a no existir en la ley, de una manera expresa, como única excepción de la aplicación del estatuto, en lo que se refiere al café, al que se importa 'tostado', estaríamos casi inclinados a darle la razón al apelante, amparándonos en la otra exclusión contenida en el inciso quinto de la sección primera del estatuto, que expresamente (pág. 273, Leyes 1932), excluye de su aplicación *aquellos productos agrícolas para manufacturarlos, molerlos o para fines industriales.*

"Es éste, pues, un caso en que la excepción confirma la regla de aplicación general de la ley a todos aquellos productos de igual naturaleza, no expresamente exceptuados, y por lo tanto, la resolución de la corte inferior sobre el punto debatido debe prevalecer, puesto que la letra de la ley, analizando sus diversas secciones y relacionándolas entre sí, está revelando el espíritu o intención del legislador."

El fiscal hace referencia en su alegato a una declaración de carácter pericial que no ha sido elevada a este tribunal. En la transcripción de evidencia no aparece informe pericial alguno. La prueba aportada demuestra que se introdujo en Puerto Rico una cantidad de café crudo sin que se haya dicho una palabra acerca del uso a que estaba destinado dicho café. No sabemos si se trata de un producto agrícola para manufacturarlo, molerlo o para fines industriales. La corte inferior sostiene que la ley, al exceptuar los artículos que se importan para consumo doméstico sólo menciona el café tostado, los cereales, las frutas de países no tropicales y las legumbres y nueces, y que por lo tanto todo lo que no está exceptuado por la ley está incluído en sus preceptos prohibitivos, de acuerdo con la máxima *inclusio unius est exclusio alterius.* Esta regla, como dijimos en *Salgado* v. *Comisión Hípica Insular,* 49 D.P.R. 464, igual que otros cánones de hermenéutica legal, constituye únicamente una ayuda para fijar el significado de la ley y debe ceder cuando surge una

intención contraria de parte del legislador. En este caso, sin embargo, no hay para qué discutir el alcance de las disposiciones prohibitivas en relación con los hechos denunciados, porque únicamente sabemos por la prueba que se importó café crudo, es decir, semilla de café, sin haberse provisto el acusado del certificado exigido por la ley. La importación de semillas en estas condiciones está expresamente prohibida por el estatuto.

■ Sostiene la defensa que la ley en cuestión no cubre los hechos denunciados, ya que habla de "importar" cuando dice "no se importará en Puerto Rico", y que según opinión de la "Court of Customs & Patent Appeals", 76 Fed. (2) 605, la palabra "importar" sólo se refiere a productos traídos a Puerto Rico de un país extranjero y no de los Estados Unidos. Es cierto que el referido tribunal estableció esa distinción, pero lo hizo refiriéndose a tarifas que pudieran imponerse a productos introducidos en Puerto Rico y no refiriéndose a una disposición legislativa que en nada se relaciona con derechos de importación. La ley que venimos comentando se estableció para la protección de las plantas y la agricultura de Puerto Rico, y no para gravar con un tributo los bienes importados. La palabra "importará", tal y como aparece usada en esta ley, debe interpretarse en el sentido de incluir todas las plantas y artículos que en la misma se mencionan, cualquiera que sea el país de donde procedan.

■ Se arguye por último que la referida ley fué derogada por la Ley núm. 35 de 1934 (pág. 299) y que esta derogación, siendo en beneficio del acusado, debe tener efecto retroactivo. Los hechos denunciados ocurrieron y la denuncia fué presentada antes de la referida derogación. De acuerdo con el artículo 386 del Código Político, la derogación de cualquier estatuto por la Asamblea Legislativa no tendrá el efecto de exonerar o eximir de ninguna pena, embargo, confiscación o responsabilidad en que se hubiere incurrido bajo dicho estatuto a menos que la ley derogatoria así lo dispusiera expresamente y se tendrá por vigente dicho estatuto al objeto de sos-

tener la respectiva acción o proceso para exigir el cumplimiento de dicha pena, embargo, confiscación o responsabilidad. Este artículo fué interpretado y aplicado en el caso de *El Pueblo* v. *Valentín,* 33 D.P.R. 40, donde se sostuvo que la ley derogatoria no exoneraba de responsabilidad al acusado, por hechos ocurridos y denunciados antes de la derogación. La exoneración, dijo entonces esta corte, para que surta efecto debe ser expresamente consignada en la ley derogatoria.

La corte inferior no ha cometido los errores que se le atribuyen, *debiendo confirmarse la sentencia apelada.*