El Pueblo de Puerto Rico, peticionario, *v.* Tribunal de Distrito de San Juan, Hon. Jesús A. González, Juez, demandado; Julián Ríos Díaz, interventor.

Núm. 1823.—*Sometido:* Diciembre 7, 1949.   *Resuelto:* Diciembre 14, 1949.

*Hon. Procurador General Vicente Géigel Polanco (Baldomero Freyre, Fiscal del Distrito de San Juan, en la petición y el mismo y José Trías Monge, Procurador General Interino, en el memorándum. en apoyo de dicha petición) y Fernando Fornaris, Jr., Fiscal Auxiliar del Tribunal Supremo, abogados del peticionario; Herminio A. Concepción, abogado del interventor, acusado en el caso principal.*

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Julián Ríos Díaz, interventor en este recurso de *certiorari,* fué acusado el 28 de septiembre de 1949 de infracción al artículo 7 de la Ley núm. 14 de 8 de julio de 1936 ((2) pág. 129) según fué enmendado por la núm. 95 de 12 de mayo de 1937 (Leyes de 1936–37, pág. 240). La alegada infracción consistió en que allá para el mes de mayo de 1949, el acusado tenía un revólver en su posesión y dominio sin haberlo registrado de acuerdo con la referida Ley. Al llamarse el caso para juicio el 10 de octubre de 1949, el acusado inmediatamente alegó que el citado artículo 7 había sido enmendado por la Ley núm. 44 de 27 de septiembre de 1949 ((2) pág. 97) permitiendo a toda persona que tuviere una arma sin registrar que la declare ante el jefe de la policía de su residencia, a más tardar el trigésimo día después de aquél en que se haga la última publicación de los edictos a que se refiere el artículo 9 de la Ley;[1] que la Ley enmendatoria no con-

___

[1] Los artículos 7 y 9, según fueron enmendados por la Ley núm. 44 de 27 de septiembre de 1949, prescriben:

"Artículo 7.—Toda persona que tenga en su poder, por cualquier concepto, cualquier arma de fuego, en la fecha en que entre en vigor esta Ley, tiene la obligación de declararlo así por escrito al jefe de la Policía del Distrito donde resida, a más tardar el trigésimo día después de aquél en que se haga la última publicación de los edictos que se ordenan en el artículo 9 de esta Ley.

"Igualmente, toda persona que obtenga el dominio o posesión de cualquier arma de fuego en cualquier forma, después de entrar en vigor esta Ley, tiene la obligación de declararlo así por escrito *inmediatamente* al jefe de la Policía del Distrito donde resida. La declaración del arma se hará mediante una declaración jurada en duplicado conteniendo su nombre completo, dirección, ocupación, color, su firma o huellas digitales de sus pulgares si no supiere firmar y el calibre, clase, modelo y número de fábrica del arma de fuego que posea. Si el arma no tuviere número de fábrica, o éste apareciere ile-

tiene ninguna cláusula de reserva en cuanto a las causas pendientes; y que no habiendo expirado el nuevo término para declarar el arma, solicitaba el archivo y sobreseimiento de la acusación. La corte a quo declaró con lugar la moción. Para revisar dicha resolución se interpuso por el Gobierno este recurso de certiorari.

■■ Arguye el Fiscal que si bien la Ley enmendatoria no contiene cláusula de reserva, el artículo 386 del Código Político la provee(²) como sigue:

"Artículo 386.—La derogación de cualquier estatuto por la Asamblea Legislativa no tendrá el efecto de exonerar o eximir de ninguna pena, [la versión inglesa dice penalidad] embargo, confiscación o responsabilidad en que se hubiere incurrido bajo dicho estatuto, a menos que la ley derogatoria así lo dispusiere expresamente, y se tendrá por vigente dicho estatuto, al objeto de sostener la respectiva acción o proceso para exigir el cumplimiento de dicha pena, embargo, confiscación o responsabilidad."

El acusado, tratando de evitar la aplicación del citado artículo 386—debió invocarse el 44—arguye que en el presente

gible, el poseedor hará grabar su nombre completo sobre el acero de la parte trasera del mango del arma; y así lo hará constar en su declaración. El jefe de distrito de la Policía Insular del domicilio del declarante entregará a éste una constancia de dicho·acto y enviará el original de la declaración al Jefe de la Policía Insular de Puerto Rico, dentro de los cinco (5) días siguientes a la fecha en que le sea entregada, y conservará el duplicado en su archivo oficial.

"El Jefe de la Policía Insular de Puerto Rico deberá organizar el registro de armas en el Cuartel General de la Policía Insular en una forma sistemática y ordenada, de manera que sea fácil la búsqueda de los nombres de las personas que tengan armas inscritas en Puerto Rico, así como todos los detalles esenciales sobre el arma inscrita. Este registro debe ser sellado con el sello de la Policía Insular y debidamente custodiado.

"Después de vencido el término durante el cual podrá procederse a la inscripción de las armas de fuego en la forma que se prescribe en el párrafo anterior, el hecho de poseer un arma de fuego cuya posesión o dominio ha sido obtenido sin ajustarse a las disposiciones de esta Ley, o no hubiera sido declarada de acuerdo con las prescripciones de este artículo, será evidencia prima facie de que el arma de fuego se ha obtenido, se posee o se transporta ilegalmente. Toda persona que poseyere o tuviere bajo su dominio un arma de fuego y la perdiere o se le desapareciere, lo notificará por escrito inmediatamente al jefe de Distrito de la Policía Insular en que resida la persona a quien se le ha perdido o desaparecido el arma. El hecho de que el

caso no se trata de una derogación, sino de una enmienda.
Pero la enmienda al artículo 7, no importa el nombre que
se le dé, equivale a una derogación.   I Sutherland, *Statutory
Construction,* (3ra. ed. 1943) sec. 2002, pág. 447.   Es prin-
cipio bien establecido que la enmienda a una ley, hasta cierto
punto, tiene el efecto de derogar aquellas disposiciones que
sean incompatibles con la ley enmendada.   Crawford, *Statu-
tory Construction,* (1940) sec. 115, pág. 170.   Por consi-
guiente, el mero hecho de que en la Ley núm. 44 de 1949 se use
la palabra "enmienda" y no "derogación", no excluye la
aplicación de la cláusula de reserva contenida en el artículo
44 del Código Político.

██ Se arguye, además, que una legislatura no puede
limitar el poder que tienen legislaturas posteriores para de-
rogar, enmendar o aprobar las leyes.   Convenimos con el
acusado en que una legislatura no puede restringir o limitar
su poder ni el de futuras legislaturas para aprobar, enmen-
dar o derogar leyes.   *Beer Co.* v. *Massachusetts,* 97 U.S. 25
(1877); *Stone* v. *Mississippi,* 101 U.S. 814 (1879); *Fletcher*

arma usada en la perpetración de un delito estuviera declarada e inscrita a
nombre de determinada persona, no establece contra ésta presunción alguna
de culpabilidad de, o conexión con, el delito cometido, y los jueces tendrán en
cuenta, e instruirán a los jurados que deberán tener en cuenta, esta disposición
al considerar y resolver casos en que el uso de un arma de fuego está en
controversia.''

   ''Artículo 9.—El Secretario Ejecutivo de Puerto Rico publicará, sema-
nalmente, durante los sesenta (60) días siguientes a aquél en que entre en
vigor esta Ley, en dos (2) periódicos de los de mayor circulación en la Isla
y por estaciones radioemisoras de Puerto Rico, un edicto informando al pú-
blico en general el período de gracia que concede esta Ley para la decla-
ración de armas de fuego y llamando la atención hacia el último día que, de
acuerdo con sus disposiciones, tienen las personas afectadas por la misma
para declarar las armas que tuvieren en su posesión o dominio.''

   (²) Conviene aclarar que en el Código Político se exponen dos cláusulas
de reserva.  Una está contenida en el artículo 386, la cual se refiere a
leyes derogadas de carácter civil; la otra está contenida en el artículo 44 que
es aplicable a leyes derogadas de carácter criminal.  El artículo 44 prescribe:

   ''Artículo 44.—La revocación [derogación] de una ley creando un delito,
no constituye impedimento para acusar o perseguir y castigar un hecho ya
cometido con infracción de la ley así revocada [derogada], a menos que
no se declare expresamente en la ley derogatoria el propósito de impedir
tal persecución o castigo.''

v. *Peck*, 10 U.S. 48, 6 Cranch 87 (1810). Pero el artículo 44 del Código Político no tiene ese alcance. Una vez derogada una ley, los procesos criminales incoados por violación a la ley derogada, caen con ésta, toda vez que nadie puede ser sentenciado por un delito, a menos que esté en vigor la ley que lo crea, excepto cuando en la misma ley derogatoria, o en otra ley, exista una disposición expresa autorizando la prosecución de las causas pendientes. *United States* v. *Tynen*, 78 U.S. 88 (1870); *United States* v. *Reisinger*, 128 U.S. 398 (1888). Y precisamente ese es el objeto perseguido por el artículo 44 del Código Político. *Pueblo* v. *Arecco*, 67 D.P.R. 322; *Pueblo* v. *Rodríguez*, 50 D.P.R. 36; *Pueblo* v. *Valentín*, 33 D.P.R. 40;(³) Cf. *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914. Si a pesar de lo dispuesto en el artículo 44 del Código Político, la legislatura al derogar una ley quiere que cesen las causas pendientes por infracción a la ley derogada, bien puede manifestarlo en la ley derogatoria, ya expresa o implícitamente cuando de la ley misma surja que fué su propósito que no se aplicase la ley general de reserva. *Hertz* v. *Woodman*, 218 U.S. 205 (1910). Como dijimos en *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, supra, ''una mayoría de las jurisdicciones de los Estados Unidos han aprobado estatutos generales de reserva con el expreso propósito de obtener la continuación del estatuto derogado en lo que respecta a actividades pasadas y acciones legales pendientes''. Nuestra ley general de reserva (artículos 44 y 386 del Código Político) es sustancialmente igual a la sección 13 de los Estatutos Revisados de los Estados Unidos, en relación con la cual se dijo en *Hertz* v. *Woodman*, supra:

''Como la sección de los Estatutos Revisados en cuestión sólo tiene la fuerza de un estatuto, sus disposiciones no pueden justificar el hacer caso omiso de la voluntad del Congreso manifestada ya expresamente o por necesaria inferencia en una ley posterior. Pero aun-

---

(³)En los casos de *Pueblo* v. *Arecco*, *Pueblo* v. *Rodríguez* y *Pueblo* v. *Valentín*, arriba citados, indebidamente se aplicó el artículo 386 del Código Político, en vez del 44, pero el resultado a que en ellos se llegó es correcto.

que esto es cierto, las disposiciones de la sección 13 deben considerarse como si estuvieran incorporadas y formaran parte de las leyes posteriores, y por consiguiente, bajo el principio general de interpretación que requiere, que de ser posible, se dé efecto a todas las partes de una ley, la sección debe ser aplicada, a menos que por declaración expresa o por necesaria inferencia, *que surja de los términos de la ley misma* considerada en su totalidad, resulte que se frustraría la intención de la legislatura, si hubieran de aplicarse las disposiciones de la sección 13. En obsequio a la brevedad no nos detendremos a citar los muchos casos de cortes estatales de última instancia, interpretativos del efecto de estatutos generales similares a la sección 13 de los Estatutos Revisados, porque creemos que los puntos de vista que acabamos de exponer son obvios, y su corrección ha sido establecida por decisiones anteriores de esta Corte relacionadas con la referida sección. *United States* v. *Reisinger,* 128 U. S. 398.'' (Bastardillas nuestras.)

■ La ley enmendatoria de 27 de septiembre de 1949 no contiene ninguna disposición en que expresamente o por necesaria inferencia, la Legislatura manifestara su intención de excluir la cláusula de reserva contenida en el artículo 44 del Código Político. Sin embargo, como muy bien indica el acusado, concurren en el presente caso dos circunstancias que consideradas conjuntamente demuestran que el propósito legislativo fué que no continuasen las acciones pendientes. Una de dichas circunstancias es que este Tribunal, en el caso de *Pueblo* v. *Pérez,* 52 D.P.R 169, interpretando la Ley núm. 95 de 12 de mayo de 1937, por la cual fueron enmendados los artículos 7 y 9 de la Ley núm. 14 de 8 de julio de 1936, conocida por Ley de Registros de Armas, resolvió que la ley derogatoria—cuyos artículos 7 y 9 eran sustancialmente iguales a los 7 y 9 de la Ley núm. 44 de 1949—tenía el efecto de descontinuar las causas pendientes.(4) La otra circunstancia es que en las actas de la Cámara de Representantes de modo expreso aparece que el propósito de la Ley núm. 44 de 1949 fué eliminar las causas pendientes y dar a todo el que no hubiere cumplido con la ley, una amplia oportunidad de aca-

(4)Sin duda la decisión de aquel caso no era correcta. El Tribunal debió aplicar la ley general de reserva y no lo hizo.

tarla.(⁵)   Parece razonable que la Legislatura no expresara en la ley misma ese propósito, ya que este Tribunal, al interpretar la ley anterior, había resuelto que su efecto era descontinuar las causas pendientes.   Sólo un exceso de precaución aparentemente injustificado hubiera podido inducir a la Legislatura a insertar en la ley el propósito que tan claramente había sido exteriorizado por el Comité que la estudió e informó a la Cámara de Representantes.   Es verdad que la doctrina establecida en el caso de *Pueblo* v. *Pérez,* supra, fué revocada *sub silentio* por los de *Puerto Rico Ilustrado* v. *Buscaglia, Tes.,* supra y *Pueblo* v. *Arecco,* supra. Pero existe la circunstancia adicional de que en el caso de *Pueblo* v. *Pérez,* supra, aunque erróneamente, se estableció una diferencia entre una ley derogada y una ley enmendada. Y si se estudia detenidamente este último caso, se verá que la opinión del Tribunal Supremo fué al efecto de que tratándose de una ley enmendada, como alegaba el fiscal en aquel caso, no era de aplicación la cláusula de reserva del Código Político, toda vez que ésta, según él, se refiere a leyes derogadas.   Como en los casos de *Arecco* y *Puerto Rico Ilustrado,* supra, se trataba de leyes derogadas, bien pudo la Legislatura creer, bajo la errónea doctrina del caso de *Pérez,* supra, que tratándose de una enmienda a la misma ley, substancialmente igual a la interpretada en dicho caso, no era necesario expresar en la ley enmendatoria su intención de que no se prosiguiesen las causas pendientes.   Desde luego, que el caso de *Pueblo* v. *Pérez,* supra, debe considerarse expresamente revocado.

---

(⁵)El acta de la Cámara de Representantes, en lo pertinente, dice:

"En virtud de este proyecto se le da una nueva oportunidad a todas esas personas que tienen esas armas de fuego sin inscribir para que las inscriban sin que se les procese ni condene en ninguna forma por ello, *aunque haya una acción en contra de ellos,* y procederse a la inscripción de las armas sin más demora. Lo que se persigue con esta Ley es conseguir que todas las armas no inscritas, se inscriban, y para ello brinda esta nueva oportunidad a los infractores de la Ley." (Bastardillas nuestras.)

No tenemos duda de que en el presente caso fué la intención de la Legislatura que se archivaran los casos pendientes siempre que, previamente, el acusado cumpla con la obligación impuéstale por la ley de registrar el arma. El acusado tiene derecho a esa oportunidad. *Procede anular el auto expedido*