EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SALVADOR M. VIDAL, acusado y apelante.

Número 15846.
*Sometido:* 1 de marzo de 1955. *Resuelto:* 16 de marzo de 1955.

*José Guillermo Vivas,* abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Ramón Olivo Nieves, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Snyder emitió la opinión del Tribunal.

Salvador M. Vidal fué acusado ante el Tribunal Superior de una infracción a la Orden Ejecutiva del 21 de mayo de 1953 emitida por el Gobernador de Puerto Rico en relación con la Ley núm. 183, Leyes de Puerto Rico, 1951 ((1) pág. 435), conocida como la "Ley de Defensa Civil de Puerto Rico de 1951."(¹) Se imputaba al acusado que el 19 de noviembre de 1953, de 7:55 p.m. a 8:05 p.m., como administrador de la "Casa Kelvinator Vidal" en Ponce, mantuvo luces encendidas dentro y fuera de su establecimiento comercial, no obstante el hecho de haberse dado una señal de alarma o aviso para llevar a efecto en dicho momento un simulacro de oscurecimiento por las autoridades correspondientes de la Defensa Civil de Puerto Rico. Celebrado el juicio en los méritos, el acusado fué declarado culpable y sentenciado a pagar una

---

(¹) El art. 6(*b*)(1) de la Ley núm. 183 autoriza al Gobernador a emitir órdenes y reglamentos necesarios para llevar a cabo las disposiciones de esta Ley. El art. 6(*b*)(3) autoriza al Gobernador a "[t]omar cualquier medida de Defensa Civil, incluyendo la dirección y control de (*a*) obscurecimiento, prácticas de ataques aéreos . . .".

El art. 15 de la Ley prescribe:

"Cualquier violación de esta Ley o de las órdenes, reglas y reglamentos promulgados para llevar a cabo las disposiciones de esta Ley, incluyendo órdenes para la citación de testigos, o *duces tecum,* constituirá delito menos grave y serán castigados con multa no menor de $100, (cien dólares) ni mayor de $1,000 (mil dólares) o cárcel por un término que no será menor de treinta (30) días ni mayor de un año, o ambas penas, a discreción del Tribunal. Se le confiere jurisdicción original exclusiva al Tribunal de Distrito [ahora Tribunal Superior] de Puerto Rico para entender en cualquier acción civil o criminal que surja por violaciones o infracciones a las disposiciones de esta Ley." (Corchetes nuestros.)

multa de $100 o un día de cárcel por cada dólar que dejare de pagar, no excediendo el término de prisión de 60 días.

El único señalamiento dice así: "Cometió grave error de hecho y de derecho el Tribunal Superior al declarar al acusado apelante culpable del delito que se le imputó." El acusado descansa en su testimonio al efecto de que la firma en cuestión es una corporación conocida como Vidal & Cía., Inc.; que él es presidente de la corporación; que es el conserje, y no el presidente, el que tiene el deber de apagar las luces; y que dió instrucciones al conserje para que las apagara cuando cerrara el establecimiento la noche en cuestión. Entonces el acusado arguye que "... el culpable sería el encargado de apagar las luces o a lo sumo la corporación en sí como persona jurídica, pero no el Presidente que no tiene que apagar las luces. De otra manera entendemos se estaría nulificando la personalidad jurídica consagrada por la Ley de Corporaciones." En apoyo de su contención el acusado hace solamente dos citas de 3 Fletcher, *Cyclopedia of Corporations*, sec. 1349, págs. 1129–30.

No nos detenemos a considerar el problema de la responsabilidad criminal del presidente de una corporación por un delito de esta naturaleza, en un caso en que no ha tenido intervención ni en la administración de la corporación ni en la conducta específica en cuestión. Aquí el testimonio demuestra que el acusado era el administrador a cargo del negocio y que él personalmente dió las órdenes al empleado en cuanto a las luces de que aquí se trata. Bajo estas circunstancias, el acusado como administrador del negocio es personalmente responsable del delito aquí imputado aun cuando, según declaró, diera órdenes al empleado para que apagara las luces al cierre del establecimiento en dicho día. Esto es así porque el delito aquí envuelto es uno de "bienestar público" que no requiere intención criminal. Véanse *Morissette* v. *United States*, 342 U.S. 246, 250–60, y el escolio 20 a la pág. 262; *Pueblo* v. *Laguna*, 72 D.P.R. 6, y *Pueblo* v.

*Bou*, 64 D.P.R. 466, que trataba de adulteración y transporte de leche. *Cf. Gordon* v. *United States*, 203 F.2d 248, 253, revocado en 347 U.S. 909–10, luego de dejarse sin efecto la sentencia en 345 U.S. 968. Tales delitos ". . . no dependen de elemento mental alguno sino que consisten solamente de omisiones o actos prohibidos." *Morissette* v. *United States*, supra, pág. 252–3. En tales casos ". . . la actuación culpable en sí sola establece el delito." *Morissette* v. *United States*, supra, pág. 256. Una acusación de esta índole ". . . se basa en una clase de legislación ahora familiar por la cual las penalidades sirven como medios efectivos de reglamentación. Tal legislación no requiere el requisito convencional para una conducta criminal—el conocimiento de que se está haciendo algo malo. En interés del mayor bienestar pone el peso de actuar a riesgo sobre una persona que de otro modo es inocente pero que se encuentra en una relación de responsabilidad hacia un peligro público." *United States* v. *Dotterweich*, 320 U.S. 277, 280–1; *Carolene Products Co.* v. *United States*, 140 F.2d 61 (C.A. 4, 1944); *State* v. *Burnam*, 128 Pac. 218 (Wash., 1912).

En casos de esta naturaleza el acusado como administrador del negocio es culpable personalmente aun cuando el acto envuelto haya sido cometido sin su conocimiento o permiso. Véase *Pueblo* v. *Sánchez*, 57 D.P.R. 38, que envuelve la adulteración de leche. "Indudablemente las cargas pueden surgir bajo un estatuto que penalice la transacción aun cuando no exista la conciencia de que se está haciendo algo malo. Al balancear cargas relativas . . . [la Asamblea Legislativa] ha preferido ponerla sobre los hombros de aquéllos que por lo menos tienen la oportunidad de informarse a sí mismos de la existencia de las condiciones impuestas para la protección del [público] . . . más bien que poner dicha carga sobre el público inocente que está enteramente indefenso." *United States* v. *Dotterweich*, supra, págs. 284–5. (Corchetes nuestros.)

Vistas las disposiciones del art. 54 del Código de Enjuiciamiento Criminal, ed. de 1935, se modificará la sentencia para que provea que se sentencia al acusado a pagar una multa de $100 o un día de cárcel por cada dólar que deje de pagar, no excediendo la cárcel de *90* días.   *Así modificada, se confirmará la sentencia.*