EL PUEBLO DE PUERTO RICO, demandante y apelado, v.
LEANDRO MIRANDA, acusado y apelante.

Número 15945.

*Sometido:* 1 de marzo de 1956. *Resuelto:* 5 de noviembre de 1956.

*J. Calzaga González* y *Santos P. Amadeo,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

El apelante fué acusado de violar la Ley Insular de Suministros (23 L.P.R.A. sec. 731 y sigtes.) en relación con la Orden Administrativa núm. 228 de 1953.[1]   La acusación

---

[1] El art. 13(*b*) de la Ley núm. 228 de mayo 12 de 1942, según enmendado por la Ley núm. 31 de septiembre 15 de 1950 ((2) pág. 249) dispone que: "Cualquier persona que violare alguna disposición de esta

contiene tres cargos, a saber, que el 21 de mayo, el 3 de junio y el 10 de junio de 1953, Leandro Miranda, quien por entonces se dedicaba a la venta de arroz al por mayor, ilegal, voluntaria y maliciosamente violó las disposiciones de dicha orden administrativa, vendiéndole a Daniel Flores Castro ciertos sacos de arroz y cobrándole cada vez un sobreprecio que figuró en las facturas como correspondiente a ventas de cajas de dulce, aceite y chicle, cuando en realidad el acusado nunca le vendió tales artículos al referido comprador.

Celebrado el juicio, el tribunal a quo declaró culpable al acusado y le condenó a dos meses de cárcel y $250 de multa por cada una de las tres infracciones, disponiendo que las penas de cárcel se cumplirían concurrentemente. En apelación se alega que la corte sentenciadora incidió en los siguientes errores:

---

Ley, o de cualquier escala de precios, regla, reglamento u orden emitido por el Administrador General de Suministros de acuerdo con las disposiciones de esta Ley, y cualquier persona que radique o haga alguna declaración o informe falso en algún aspecto fundamental en algún documento o informe requerido de dicha persona por el Administrador incurrirá *en delito menos grave (misdemeanor) y de ser convicta se le castigará con cárcel por un término que no será menor de treinta (30) días ni mayor de dos (2) años y además con multa que no será menor de cien (100) dólares ni mayor de diez mil (10,000) dólares.* En defecto de la multa se impondrá un día de cárcel por cada dólar que se dejare de pagar. Disponiéndose, sin embargo, que toda persona que violare cualquier Regla, Reglamento u Orden emitida por el Administrador General de Suministros relativa a prácticas de acaparamiento de algún artículo de primera necesidad, incurrirá en delito grave (*felony*) y convicta que fuere se le castigará con pena de presidio por un término no menor de seis meses ni mayor de dos años y además con multa que no será menor de $1,000 ni mayor de $10,000.

"La sección del Tribunal de Distrito de Puerto Rico del lugar donde se realice el acto de transacción constitutivo del delito o de la violación de cualquier Regla, Reglamento u Orden, ya fuere delito menos grave (*misdemeanor*) o delito grave (*felony*) tendrá jurisdicción original sobre dicha ofensa *y el juicio se celebrará por tribunal de derecho;* Disponiéndose, *que las personas convictas de las infracciones antes mencionadas no podrán acogerse a los beneficios de la ley de sentencias probatorias ni de ninguna otra ley que permita la suspensión de sentencias en casos criminales en Puerto Rico . . ."* (Bastardillas nuestras.)

"Primer Error: . . . al acusado se le privó del derecho constitucional a juicio por jurado garantizado por . . . la Constitución del Estado Libre Asociado de Puerto Rico . . .

"Segundo Error: Las sentencias dictadas contra el acusado apelante es nula e ineficaz (sic) por haber sido dictadas en violación del Artículo 2, Sección 12, Inciso 2 de la Constitución del Estado Libre Asociado de Puerto Rico que prohibe leyes *Ex post facto*.

"Tercer Error: . . . la prueba aportada por el Ministerio Fiscal no demostró que éste personalmente violara la ley y que si hubo alguna violación de la ley fué hecha por sus empleados sin el conocimiento ni la instigación ni autorización del acusado-apelante.

"Cuarto Error: La sección 13 (*b*) de la Ley núm. 31 de 15 de septiembre de 1950 que le priva al acusado el derecho a juicio por jurado es nula e ineficaz por estar en conflicto con las enmiendas 5ta. y 14 de la Constitución de los Estados Unidos y de la Sección 7 del Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico."

Para fundar el primer señalamiento aduce el apelante que, en vista de la naturaleza del delito y de las sanciones impuestas por ley, es aplicable la disposición constitucional que garantiza a todo acusado un juicio por jurado "en los procesos por delito grave". No tiene razón. El párrafo 2 de la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que: "En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve". Tomo 1 L.P.R.A. pág. 190. Como indican claramente el informe de la Comisión de Carta de Derechos y los debates de la Convención Constituyente, la frase "delito grave" en dicha disposición constitucional no incluye ningún delito clasificado como menos grave (*misdemeanor*), por legislación aprobada antes de entrar en vigor la Constitución, en el cual no se concedía necesariamente el derecho a juicio por jurado. Poco importa a este respecto la naturaleza del

delito y las penas provistas por ley para el mismo.(²)    Aquí las infracciones por las cuales se procesó al apelante fueron calificadas como delito menos grave (*misdemeanor*) en virtud de la Ley núm. 31 de septiembre 15 de 1950.    Y específicamente dicha ley dispone que el juicio debe celebrarse por tribunal de derecho.

En el segundo error apuntado alega el apelante que la Ley núm. 97 de junio 19 de 1953 es la única aplicable para determinar las penalidades en este caso y que resulta inconstitucional porque alteró la norma del castigo que prescribía la ley para los delitos aquí envueltos, al momento de ser cometidos, en forma perjudicial al acusado.    Creemos que esta contención carece de fundamento.    De acuerdo con los tres cargos que contiene la acusación, el apelante cometió los delitos menos graves antes mencionados en tres fechas distintas: 21 de mayo, 3 de junio y 10 de junio de 1953.    No hay duda que para esa época el art. 13 (*b*) de la Ley núm.

---

(²) Para explicar el alcance limitado de la garantía constitucional de juicio por jurado en delitos graves, dicha Comisión señaló lo siguiente: "No hemos usado la palabra grave como equivalente a *'felony'*, como lo hace nuestro derecho penal. *La hemos usado para incluir en ella todos los delitos 'felony' y aquellos otros en que, sin serlo, la legislación vigente concede derecho a juicio por jurado necesariamennte.* Ejemplo de éste es el delito de homicidio involuntario que, aunque 'misdemeanor' sólo puede promoverse en el Tribunal de Distrito, teniendo los acusados de este delito derecho a juicio por jurado siempre. No quedan incluídos, desde luego, aquellos delitos menos graves respecto a los cuales la legislación vigente concede el juicio por jurado cuando se procesan originalmente en el Tribunal de Distrito y no lo concede cuando se procesan originalmente en el Tribunal Municipal, *ni tampoco aquellos delitos menos graves que aunque se procesan originalmente en el Tribunal de Distrito la legislación vigente no concede en el juicio de los mismos el derecho a juicio por jurado.*

"La palabra grave, según la hemos usado en el texto, incluirá para siempre los delitos ahora calificados como *'felonies'*, aunque esa calificación desaparezca en el futuro. También incluirá para siempre los delitos *'misdemeanors'* en los que ahora se concede necesariamente el derecho a juicio por jurado." (Bastardillas nuestras.) Véase 21 Revista Jurídica de la Universidad de Puerto Rico 1, 19 (1951).

Por otro lado, en los debates de la Convención Constituyente, *Diario de Sesiones*, Convención Constituyente de Puerto Rico, pág. 606, se adoptó la misma idea sobre el significado de la frase "delito grave" y el alcance del derecho constitucional a juicio por jurado.

228 de mayo 12 de 1942, según fué enmendada por la Ley núm. 31 de septiembre 15 de 1950, proveía para cada violación de ley imputada al apelante una pena de cárcel por un término no menor de treinta (30) días ni mayor de dos (2) años y además una multa no menor de cien (100) dólares ni mayor de diez mil (10,000) dólares. Originalmente el art. 13(b) de la Ley núm. 228 de 1942 fijaba una pena de cárcel por un término no menor de tres (3) meses ni mayor de dos (2) años y una multa de no más de cinco mil (5,000) dólares. Es obvio que el tribunal a quo aplicó en este caso la ley enmendatoria de 1950, ya que condenó al apelante a dos (2) meses de cárcel y doscientos cincuenta (250) dólares de multa por cada uno de los delitos.

Sin embargo, el apelante sostiene que posteriormente, al aprobar la Ley núm. 97 de junio 19 de 1953, la Asamblea Legislativa revivió las sanciones que originalmente establecía el art. 13(b) de la Ley núm. 228 de 1942 e implícitamente derogó la ley enmendatoria de 1950. Dicha contención descansa exclusivamente en el hecho de que al final del art. 2 de la referida Ley núm. 97 de 1953 no se incluyó la frase ritual "según enmendada" al disponer que "las violaciones a las órdenes, reglas y reglamentos dictadas por el Administrador de Estabilización Económica serán castigadas en la forma dispuesta en la Ley núm. 228 de 12 de mayo de 1942". Nos parece absurda e inaceptable la interpretación de la ley que sustenta el apelante. En primer lugar, por razones obvias de lógica y de justicia, las derogaciones tácitas no son favorecidas por los tribunales. *Pueblo* v. *Shell Co. (P.R.) Ltd.*, 56 D.P.R. 57 (1940); 1 Sutherland, *Statutory Construction* (3ª ed.) sec. 2012. Y además el único propósito de la Ley núm. 97 de junio 19 de 1953 fué crear la Administración de Estabilización Económica y transferirle las funciones, poderes y deberes de la anterior Administración General de Suministros y también de la Administración de Inquilinato. Todo indica que la intención legislativa fué mantener inalteradas las disposiciones

sustantivas de la Ley 228 de 1942, según estaba en vigor entonces. De ahí que la omisión de las palabras "según enmendada" al final del aludido art. 2 no puede constituir una derogación implícita de la Ley de 1950 enmendatoria del art. 13(*b*) antes mencionado. En realidad, en el contexto de la ley de 1953, basta la referencia a la "Ley núm. 228 de 12 de mayo de 1942" para que queden incluídas todas las enmiendas introducidas desde 1942 hasta 1953 a las disposiciones penales de la Ley Insular de Suministros. I Sutherland, *Statutory Construction* (3ª ed.) secs. 1910, 1935, 2006 y sigte. 2031. Es decir, tanto a la fecha en que se cometieron los delitos aquí imputados, como al momento de dictarse las sentencias apeladas, estaba en vigor la Ley núm. 31 de septiembre 15 de 1950, enmendatoria del art. 13(*b*) de la Ley Insular de Suministros. Por eso, en el caso de autos no se plantea en verdad ninguna cuestión en cuanto a si al amparo del párrafo 2 de la Sección 12 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico una ley o su aplicación es *ex post facto* o no. Cf. *Lindsey* v. *Washington*, 301 U.S. 397 (1937) y *Fernández* v. *Rivera*, 70 D.P.R. 900 (1950).[3]

■■■■ Tampoco tiene razón el apelante en cuanto al tercer señalamiento de error. Se queja de que la prueba de cargo es insuficiente porque no demostró que él personalmente violara la ley ni que él consintiera, instigara o autorizara las ventas que dos de sus empleados efectuaron en su establecimiento. En general la "intención criminal" (*mens*

---

[3] Conviene señalar que, aparte de la interpretación que aquí adoptamos, el tribunal o quo procedió correctamente al aplicar a este caso las disposiciones de la ley enmendatoria de 1950 ya que según dispone el art. 44 del Código Político (2 L.P.R.A. sec. 252): "La revocación de una ley creando un delito, no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido con infracción de la ley así revocada, a menos que no se declare expresamente en la ley derogatoria el propósito de impedir tal persecución o castigo." Cf. *Pueblo* v. *Tribunal de Distrito*, 70 D.P.R. 678, 680–681 (1949). Véase además el art. 386 del Código Político (2 L.P.R.A. sec. 253); *Pueblo* v. *Arecco*, 67 D.P.R. 322 (1947) y *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914 (1945).

*rea*) es un factor necesario para cometer un delito. Por eso no basta para imponer responsabilidad criminal la mera demostración de que se cometieron actos prohibidos por ley si éstos se deben a error, accidente, desconocimiento o ignorancia. Este elemento mental del delito se expresa en términos tales como "intencionalmente", "voluntariamente", "maliciosamente", "con intención maligna", etc. Aún si la ley que crea el delito no dispone específicamente que sea necesaria la intención criminal, siempre debemos interpretar el estatuto penal de manera que se requiera como elemento del delito dicho estado mental, a menos que la ley o la historia legislativa indiquen claramente lo contrario. Véase *Morissette* v. *United States*, 342 U.S. 246 (1952); *People* v. *Vogel*, 299 P.2d 850 (1956); Hall, *General Principles of Criminal Law*, 279–376. Sin embargo, aquí el art. 13(*b*) de la ley aplicable fué enmendado por la Ley núm. 31 de septiembre 15 de 1950 para eliminar deliberadamente toda "intención criminal" (*mens rea*) como condición de la responsabilidad criminal. .

Originalmente el art. 13(*b*) de la Ley núm. 228 de 1942 disponía:

"Cualquier persona que *voluntariamente* violare alguna disposición de esta Ley, y cualquier persona que radique o haga alguna declaración o informe falso en algún aspecto fundamental en algún documento o informe requerido de él por el Administrador, será multada después de hallársele culpable, con una multa que no excederá de cinco mil (5,000) dólares y cárcel por un término no menor de tres meses ni mayor de dos (2) años, y en aquellos casos en que la violación sea de una escala de precios, se impondrá una multa adicional equivalente a tres veces la cantidad envuelta en el negocio prohibido. Cuando el Administrador crea que alguna persona está sujeta a castigo bajo las disposiciones de este inciso, certificará los hechos al Procurador General, quien, a su discreción, instituirá los procedimientos adecuados. La corte de distrito del lugar donde se realice el acto o transacción constitutivo del delito, tendrá jurisdicción original sobre dicha ofensa y el juicio se celebrará por tribunal de derecho. No se impondrán costas

al Gobierno de Puerto Rico por ningún procedimiento iniciado de acuerdo con esta Ley." (Bastardillas nuestras.)

Al interpretar el significado de la palabra "voluntariamente" en dicho estatuto, resolvimos en *Pueblo* v. *López,* 67 D.P.R. 623, 630–632 (1947) :

"El estatuto aquí envuelto, Ley núm. 228, Leyes de Puerto Rico, 1942 ((1) pág. 1269), según fué enmendada por la Ley núm. 493, Leyes de Puerto Rico, 1946 ((1) pág. 1475), fué copiado sustancialmente de la Ley Federal de Emergencia sobre Control de Precios de 1942. *Ex parte Irizarry,* 66 D.P.R. 672. Tanto la sección 13 de nuestra Ley como la sección 205 de la Ley Federal, 50 U.S.C.A. App. sección 925, fijan otras sanciones, tales como cancelación de licencias, interdictos y acciones civiles por triple daño, cuando las infracciones a la misma no son voluntarias, véase *Hecht Co.* v. *Bowles,* 321 U.S. 321; solamente en caso de una infracción voluntaria pueden invocarse las sanciones penales de las leyes Federal e insular. *Yakus* v. *United States,* 321 U.S. 414, 435; *United States* v. *Renken,* 55 F. Supp. 1, 3 (Dist. Ct., S. C., 1944) ; *Compañía Importadora, etc.* v. *Caldwell & Co.,* 58 N.Y.S.2d 745, 750 (1945) ; *Husers* v. *Papania,* 22 S.2d 755, 757 (La., 1945).

"Por tanto se torna importante determinar el alcance del adjetivo 'voluntariamente'. Esta es una palabra 'de muchos significados, influyendo muchas veces su contexto en la interpretación de la misma.' *Screws* v. *United States,* 325 U.S. 91, 101. Sin embargo, el problema no es muy difícil aquí ya que la ley Federal de la cual se ha copiado la nuestra ha sido interpretada judicialmente. El uso de la palabra 'voluntariamente' en la disposición penal de nuestro estatuto no hace necesario probar una intención criminal específica para cometer el delito; es decir, 'voluntariamente' no quiere decir 'malévolamente' o 'con intención maligna'. Por otro lado, tampoco es cierto el otro extremo: no se establece el delito, como en el caso de adulteración de leche, demostrando simplemente que los hechos ocurrieron; es decir, la leche estaba adulterada, o como en este caso la manteca pesaba menos de lo que se desprendía de las facturas. Véanse *Pueblo* v. *Vázquez,* 26 D.P.R. 14; *Pueblo* v. *Díaz,* 62 D.P.R. 136. Más bien al emplear la palabra 'voluntariamente' este estatuto se sitúa en el término medio: aunque no se requiere una específica intención maligna o malevolencia,

el delito, para ser voluntario, debe ser intencional, a sabiendas, deliberado u obstinado, según se distingue de accidental, por error o por desconocimiento.

"Cuando aplicamos este concepto de infracción voluntaria a los hechos del presente caso, no encontramos base para las condenas de López. Queremos hacer constar que el mero hecho de que López no participó personalmente en estas transacciones, no lo exculparía por sí sólo, bajo la Ley núm. 228, de responsabilidad criminal bajo otras circunstancias. Por otro lado, contrario a los casos de adulteración de leche, él no es absolutamente responsable, haya o no participado. Más bien la fórmula es, cuando no participa personalmente, si hay alguna evidencia, bien directa o circunstancial, tendente a demostrar que sus empleados intencional o deliberadamente infringían la ley, por instrucciones suyas, o con su aprobación o aquiescencia. Aquí no hubo tal prueba o circunstancias. Por el contrario, toda la evidencia del Pueblo y las circunstancias concurrentes demuestran su deseo de deshacerse de esta manteca sin afrontar las dificultades que le ocasionaría la gente que clamaba por ella. En efecto López fué sentenciado por ser el dueño de un establecimiento en el que se vendía manteca bajo peso. Pero la Ley núm. 228, como hemos visto, no establece que esto sea un delito en ausencia de una infracción voluntaria de su parte."

Posteriormente la Asamblea Legislativa de Puerto Rico eliminó la palabra "voluntariamente" de dicho art. 13(b) al aprobar la Ley núm. 31 de septiembre 15 de 1950. Al así actuar optó adrede por una norma absoluta de responsabilidad criminal y, por tanto, en lo que concierne a las sanciones penales, ya no existe la fórmula de voluntariedad para que una persona pueda ser castigada criminalmente bajo las disposiciones del art. 13(b) de la Ley Insular de Suministros. En el caso de autos las ventas en violación de la ley y de la Orden Administrativa núm. 228 de 1953 se efectuaron en el establecimiento del apelante por empleados de éste (debidamente autorizados para efectuar ventas y entregas de arroz) mientras actuaban en el desempeño de sus funciones como tales empleados. Las facturas en las

cuales se ocultó el sobreprecio se pagaron mediante cheques expedidos a favor del apelante. Aunque éste no administraba personalmente su establecimiento, declaró no obstante que "yo venía por la tarde todos los días . . . a chequear las operaciones". En esas circunstancias, aún en ausencia de prueba tendente a demostrar que dichos empleados infringieron la ley por instrucciones del apelante o con su aprobación o aquiescencia, éste es responsable criminalmente por los actos delictivos de sus empleados de conformidad con las disposiciones del art. 13(b) de la Ley Insular de Suministros que está hoy día en vigor. Véanse *Pueblo v. Ortiz*, 78 D.P.R. 843, 848 (1955); *Pueblo v. Vidal*, 78 D.P.R. 76 (1955); *United States v. Parfait Powder Puff Co.*, 163 F.2d 1008 (C.A. 7, 1947), cert. den. 332 U.S. 851 (1948); *United States v. George Fish Inc.*, 154 F.2d 798 (C.A. 2, 1946), cert. den. 328 U. S. 869 (1946); *Ex parte Marley*, 175 P.2d 832 (Cal. 1946); *State v. Grams*, 6 N.W.2d 191 (Wisc. 1942); *State v. Erlandson*, 249 P.2d 794 (Mont. 1952); Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689 (1930); Nota, 139 A.L.R. 306; *Criminal Liability of Corporations for Acts of their Agents*, 60 Harv. L. Rev. 283 (1946).[4]

---

[4] Es verdad que el apelante declaró que él nunca dió instrucciones a sus empleados para que facturaran otros artículos que pudiesen ocultar un sobreprecio en la venta de arroz y que los referidos empleados declararon que tenían instrucciones de vender el arroz al precio fijado por ley. Sin embargo, es obvio que el tribunal sentenciador no dió crédito a dichas declaraciones. Tampoco tenemos que considerar aquí situaciones hipotéticas que no se plantean en el caso de autos, tales como una conspiración de los empleados para perjudicar a su patrono haciendo ventas a sobreprecio en violación de la ley. Conviene señalar además que "la intención criminal" (*mens rea*) constituye un estado mental que a menudo se infiere de los actos y circunstancias que lo rodean. Por eso, aún bajo la fórmula de voluntariedad que existía antes de aprobarse la Ley núm. 31 de septiembre 15 de 1950, el mero hecho de que un patrono no efectuara personalmente una venta en violación de la ley, no le eximía de responsabilidad criminal. *Pueblo v. López*, supra, 632; Hall, *General Principles of Criminal Law*, 305 y sigtes.

■ En vista de las conclusiones a que llegamos al discutir el primer error y de lo resuelto en el caso de *Pueblo* v. *Figueroa*, 77 D.P.R. 188 (1954), confirmado en *Figueroa* v. *People of Puerto Rico*, 232 F.2d 615 (C.A. 1, 1956), es obvio que el cuarto señalamiento de error carece de méritos. El art. 13 (*b*) de la Ley núm. 31 de septiembre 15 de 1950, que niega al apelante en este caso el derecho a juicio por jurado, no infringe ninguna de las enmiendas de la Constitución de los Estados Unidos ni tampoco la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico.

■ Finalmente, debe señalarse que no hay prueba en el récord ante nos de que el apelante compró el arroz que luego vendió a sobreprecio a uno de los importadores que habían importado dicho artículo a los precios prevalecientes después del 25 de febrero y hasta junio o julio de 1953. Tampoco se probó que el apelante es uno de dichos importadores de arroz a quienes beneficia la nulidad de la Orden Administrativa núm. 228 de 1953 decretada en el caso de *Mora* v. *Mejías*, 223 F.2d 814 (C.A. 1, 1955). Por tanto, la situación es idéntica a la que consideramos en *Pueblo* v. *Ortiz*, 78 D.P.R. 843 (1955) y cabe repetir lo que allí indicamos: ". . . la decisión en el caso de *Mora* no le beneficia (al apelante) aún en el supuesto de que el planteamiento de tal defensa . . . no fuera contrario a la doctrina expuesta en *Ruiz* v. *Corte*, 71 D.P.R. 384 y *Yakus* v. *United States*, 321 U.S. 414". (Pág. 846).

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández, al igual que en el caso de *Pueblo* v. *Ortiz*, 78 D.P.R. 843, disintió.