EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Alexander González Ramos<br><br>Recurrente | Certiorari<br><br>2005 TSPR 134<br><br>165 DPR ____ |

Número del Caso: CC-2005-495

Fecha: 16de septiembre de 2005

Tribunal de Circuito de Apelaciones:

Región Judicial de Utuado

Juez Ponente:

Hon. Germán J. Brau Ramírez

Abogados de la Parte Peticionaria:

Lcda. Vilma A. Vega Saavedra
Lcdo. Miguel A. Rodríguez Cartagena

Oficina del Procurador General:

Lcdo. Salvador J. Antonetti Stutts
Procurador General

Materia: Art. 82, 83 173, 173(b), 180, 262, 5.04, 5.05, 5.15

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

        vs.               CC-2005-495      CERTIORARI

Alexander González Ramos

    Recurrente


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de septiembre de 2005

Por hechos alegadamente ocurridos el 21 de septiembre de 2004 durante un asalto en una residencia en Lares, Alexander González Ramos, fue acusado, como coautor, por los delitos de asesinato en primer grado en su modalidad de asesinato estatutario, conspiración, robo domiciliario, y robo de vehículo de motor[1], y por violaciones a la Ley de Armas, Ley Núm. 17 de 19 de enero de 1951, 25 L.P.R.A. secs. 411 et seq. El ministerio fiscal radicó los correspondientes pliegos acusatorios, bajo las disposiciones del Código Penal de 1974, ante el Tribunal de Primera

---

[1] Artículos 82, 83, 262, 173, y 173 (B) del Código Penal, 33 L.P.R.A. secs. 4001, 4002, 4523, 4279 y 4279(b).

Instancia, Sala Superior de Utuado, el 21 de enero de 2005.

El juicio en su fondo comenzó el 11 de mayo de 2005. Así las cosas, el 16 de mayo de 2005, el peticionario, González Ramos presentó ante el foro primario una moción de desestimación. Alegó, en síntesis, que los cargos presentados en su contra debían ser desestimados. Como fundamento para ello sostuvo que, al haber entrado en vigor el nuevo Código Penal de 2004[2], debían aplicársele de forma retroactiva ––a través del Artículo 9 de este nuevo cuerpo legal o, en la alternativa, a través del Artículo 4 del Código Penal de 1974–– las disposiciones "más benignas", en cuanto a la definición de asesinato estatutario, del Código Penal de 2004. Arguyó, que la nueva definición del asesinato estatutario que ofrece el Artículo 106 del nuevo y vigente Código Penal añade el elemento de que éste sea "consecuencia natural" de la comisión del delito y la producción de la muerte, esto es, que quedó abolida la doctrina del *felony murder rule*. Alegó, además, que la interpretación del Artículo 308 del nuevo Código Penal tiene el efecto de suprimir la definición anterior de asesinato estatutario, al añadir el elemento de "consecuencia natural", ya que la nueva doctrina de asesinato estatutario y de coautoría no extienden automáticamente la responsabilidad de una persona que se le imputa haber participado en el delito base.

---

[2] Mediante la Ley Núm. 115 de 22 de julio de 2004, con vigencia el 1ro. de mayo de 2005.

El ministerio fiscal se opuso a la moción de desestimación presentada por el acusado. Alegó, en síntesis, que el Artículo 8 del nuevo Código Penal dispone que la ley penal se aplicará a hechos realizados durante su vigencia y que el Artículo 308 plasmó concluyentemente la directriz de que las disposiciones del nuevo Código nunca pudiesen aplicarse retroactivamente, beneficiaran o no al imputado. En vista de ello, sostuvo que el acusado no tenía razón al señalar que debían aplicársele, de forma retroactiva, las disposiciones del Código Penal de 2004 que alegadamente le benefician.

Por otro lado, y en cuanto a la definición del asesinato estatutario, el Estado alegó que el nuevo Código, no suprimía esta modalidad sino que, más bien, lo que hacía era establecer expresamente la relación de causalidad con el delito base, la cual, según sostuvo, siempre había estado inmersa en la prueba que se presenta en los casos de asesinato estatutario.

El 17 de mayo de 2005, el tribunal de instancia denegó, en corte abierta, la moción de desestimación. Determinó que no procedía resolver la controversia en cuanto a si la definición de asesinato estatutario que ofrece el nuevo Código Penal constituye una disposición penal más favorable que beneficia al acusado por entender que no había diferencia en cuanto a la definición de asesinato

estatutario bajo el viejo Código y la definición que ofrece el nuevo Código Penal.[3]

Inconforme con dicho proceder, González Ramos acudió --mediante recurso de *certiorari*-- ante el Tribunal de Apelaciones. Alegó, en síntesis, que el foro primario había errado al denegar la moción de desestimación presentada ya que, bajo el nuevo Código Penal, la conducta que se le imputa no era constitutiva de asesinato estatutario y que, en la medida en que el Artículo 308 impedía la aplicación retroactiva del nuevo Código, el mismo era inconstitucional.

El foro apelativo intermedio, emitió resolución denegando la expedición del recurso solicitado. Expresó en la misma que la etapa en que se había presentado el mencionado recurso no era la propicia para que éste interviniese ya que la adjudicación de las controversias planteadas tendría el efecto de interrumpir los procedimientos ante el foro primario.

Aun inconforme, González Ramos acudió --mediante recurso de *certiorari*-- ante este Tribunal, planteando como error, en síntesis y en lo pertinente, que el Tribunal de Apelaciones erró al no entrar a dirimir la moción de desestimación la cual trata sobre una controversia novel y al no determinar que el Artículo 308 del Nuevo Código Penal era inconstitucional y contradictorio con lo establecido en el Artículo 4 del antiguo Código Penal. De igual forma, el

---

[3] Vale la pena destacar que el referido foro nada dispuso en cuanto a la alegación de que el nuevo Código Penal tuviese aplicación retroactiva.

31 de mayo de 2005, el peticionario presentó una moción en auxilio de nuestra jurisdicción solicitando que paralizáramos los procedimientos ante el foro de instancia mientras se dilucidaba la controversia ante este Tribunal.

En virtud de la referida solicitud, el 1 de junio de 2005, mediante Resolución a tales efectos, ordenamos la paralización de los procedimientos a nivel del Tribunal de Primera Instancia y concedimos el término de cinco (5) días al Procurador General de Puerto Rico para que expresara lo que a bien tuviese sobre el recurso radicado, en específico sobre las disposiciones del primer párrafo del Artículo 308 del nuevo y vigente Código Penal y la interacción del mismo con el Artículo 4 del derogado Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3004.

El Procurador General ha comparecido en cumplimiento con lo ordenado. Contando con la comparecencia de las partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.


I

A. El principio de favorabilidad

Aun cuando en nuestro ordenamiento penal opera el postulado básico de que la ley aplicable a unos hechos delictivos es aquélla vigente al tiempo de cometerse el delito, Pueblo v. Rexach Benítez, 130 D.P.R. 273, 301 (1992), siguiendo la doctrina continental europea, en Puerto Rico, al derogar el Código Penal que venía rigiendo desde el

1902, adoptamos el "principio de favorabilidad", el cual quedó consagrado en el Artículo 4 del Código Penal de 1974, 33 L.P.R.A. sec. 3004.

El principio de favorabilidad ordena la aplicación retroactiva de leyes penales más favorables lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado. Dora Nevares Muñiz, Derecho Penal Puertorriqueño, Parte General, 4ta edición revisada, pág.92

El Artículo 4 del Código Penal de 1974 disponía que:

> Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
>
> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
>
> Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.
>
> En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho. (Énfasis nuestro).

Conforme el mandato de ley antes transcrito, cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre que ello resulte más favorable que lo dispuesto en la ley vigente al momento de la supuesta comisión de los hechos. Resulta importante señalar que la doctrina establece que el principio de favorabilidad opera cuando el legislador hace una nueva valoración de la conducta punible, en el sentido de excluir o disminuir la

necesidad de su represión penal. Véase, Luis Jiménez de Asúa, Tratado de Derecho Penal, Tomo II, pág. 543 (1950).

En la primera oración del antes transcrito Artículo 4 está contenida la prohibición constitucional contra las leyes ex post facto que emana del Art. II, Sección 12, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, Pueblo v. Rexach Benítez, ante. Esto significa que, por mandato constitucional, las leyes penales que perjudiquen al acusado no pueden aplicarse de forma retroactiva.[4] Sin embargo, la situación es diferente en cuanto a las leyes penales más favorables ya que, en cuanto a estas, no hay disposición constitucional alguna que prohíba su aplicación.

No obstante lo anterior, el principio de favorabilidad no tiene rango constitucional, quedando la aplicación retroactiva de las leyes penales que favorezcan al acusado dentro de la prerrogativa total del legislador. Es por ello que el principio de favorabilidad corresponde a un acto de gracia legislativa cuyo origen es puramente estatutario. Conforme a lo anterior, el legislador tiene la potestad para establecer excepciones al principio de favorabilidad, ordenando la aplicación prospectiva de la ley vigente al momento de la comisión del hecho punible, aunque sea más

___

[4] La ley ex post facto se refiere a la aplicación retroactiva de una ley que agrava para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Véase, Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, § 19.1, pág. 545-549.

desfavorable para el acusado que la ley vigente al momento de la condena. Bascuñán Rodríguez, op. cit. pág. 42. Dicho de otra manera, un acusado no tiene un derecho constitucional a la aplicación retroactiva de leyes penales más favorables.

## B. La doctrina de la supresión y las cláusulas de reserva en el derecho penal norteamericano.

Aun cuando la jurisprudencia norteamericana no ha formulado una doctrina sobre la aplicación de la ley penal más benigna, por medio de la doctrina de la supresión (*doctrine of abatement*), se atendieron las consecuencias de este principio de una forma muy similar a la doctrina continental.[5]

Bajo la doctrina de la supresión del *"common law"*, seguida originalmente por los tribunales norteamericanos, la derogación de una ley penal resultaba en la supresión de todos los procedimientos que aun no fuesen finales. Conforme a la mencionada doctrina, se interpretaba que cuando el legislador aprobaba un estatuto que derogaba o modificaba un estatuto penal anterior, tenía la intención de impedir la aplicación judicial del estatuto derogado o modificado. Expresa el profesor Bascuñán que esta doctrina impedía, en

---

[5] Véase: Comment, Today´s Law and Yesterday´s Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U.Pa.L.Rev. 120; Bascuñán Rodríguez, op. cit. pág. 50.

términos absolutos, la <u>preteractividad</u> de la ley penal[6], ya que exigía para la validez de la condena que la disposición formalmente vigente al momento de la comisión del hecho se encontrara también formalmente vigente al momento de la sentencia.[7]

La neutralización de la doctrina de la supresión se concretó con el establecimiento de <u>cláusulas generales de reserva</u> (*general saving provisions*) que disponían el principio opuesto, esto es, que salvo decisión expresa del legislador en sentido contrario, <u>los estatutos penales derogados o enmendados habrían de ser aplicados al juzgamiento de los hechos cometidos bajo su vigencia</u>. Bascuñán Rodríguez, op. cit. pág. 55; Lafave & Scott, op. cit. § 2.5(b).

De este modo, por medio de cláusulas de reserva generales aplicables a todas las leyes penales derogadas, enmendadas o reinstaladas, se estableció que al aprobar una nueva ley penal la intención legislativa no es suprimir los

---

[6] Con el término "preteractividad" el profesor Bascuñán se refiere a la aplicación institucional de una ley penal formalmente derogada, es decir, que ha perdido su vigencia formal al momento de su aplicación judicial en una sentencia, en la cual se juzga un hecho que, sin embargo, fue cometido bajo su vigencia o, excepcionalmente, con anterioridad a su vigencia. op. cit. pág. 34. En otras palabras, que a unos hechos cometidos bajo la vigencia de una ley, debe aplicárseles la misma aun cuando haya sido enmendada o derogada.

[7] Bascuñán Rodríguez, op.cit. págs. 50-52, véase además, Wayne R. Lafave & Austin Scott, <u>Substantive Criminal Law</u>, § 2.5(a), (1986); <u>Yeaton</u> v. <u>United States</u>, 9 U.S. 281 (1809) y <u>United States</u> v. <u>Tynen</u>, 78 U.S. 88 (1870).

procedimientos iniciados, y que aun no hubiesen advenido finales, sino la no supresión de los mismos a menos que la legislatura lo dispusiere así expresamente. Comment, op. cit. pág. 127. De igual forma, mediante la aprobación de éstas, el legislador garantizó la continuidad de los casos criminales.

El establecimiento de las cláusulas de reserva en el Derecho penal federal y estatal norteamericano, en consecuencia, condujo a que la regla general consista en la preteractividad de la ley penal, sea favorable o desfavorable, en dichas jurisdicciones. Bascuñán Rodríguez, op. cit. pág. 120.

La cláusula de reserva federal, aprobada por el Congreso de los Estados Unidos a estos efectos, la encontramos en el Título 1 U.S.C. sec. 109. Dicha disposición estatutaria dispone, en lo pertinente, lo siguiente[8]:

> "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

Al analizar la disposición estatutaria antes transcrita, la pregunta que deben hacerse, y contestar, los

---

[8] Los estados hicieron lo pertinente, formulando sus legisladores cláusulas de reserva similares a la federal.

tribunales es si debe aplicarse una nueva ley en reconocimiento de la voluntad del legislador de derogar una ley anterior o aminorar los efectos de una pena o si la cláusula de reserva debe entenderse a los efectos de que la intención del legislador es que la nueva ley tenga sólo efecto prospectivo, ordenando mediante la cláusula de reserva que se aplique la ley derogada o enmendada como si todavía estuviere vigente. Comment, op. cit. pág. 131.

## II

Abordamos la jurisprudencia del Tribunal Supremo de los Estados Unidos interpretativa de la cláusula de reserva federal. En United States v. Reisinger, 128 U.S. 398 (1888), el referido foro se enfrentó a la antes transcrita cláusula de reserva federal. En este caso, se trataba de un acusado bajo una ley que, al momento del juicio, había sido derogada. El acusado alegó como defensa que la nueva ley no contenía una cláusula de reserva que dispusiere que los hechos cometidos bajo la ley derogada aun pudiesen ser procesados y castigados por la misma. El Tribunal Supremo rechazó este argumento y dispuso que la nueva ley debía analizarse en conjunto con la cláusula de reserva federal. El referido foro expresó a estos efectos que:

> "It is conceded that, under the general
> principles of the common law, the repeal of a
> penal statute operates as a remission of all
> penalties for violations of it committed before
> its repeal, and a release from prosecution
> therefore after said repeal, unless there be
> either a clause in the repealing statute, or a

> provision of some other statute expressly
> <u>authorizing such prosecution</u>. In this case the
> court is of the opinion that [1 U.S.C. sec. 109],
> contains such provision". pág. 401.

De este modo, el Tribunal Supremo de los Estados Unidos reconoció que la aprobación de la cláusula de reserva federal expresaba la intención legislativa de mantener la vigencia de las leyes penales derogadas o enmendadas para todos aquellos hechos cometidos bajo éstas.[9]

En <u>Hamm</u> v. <u>City of Rock Hill</u>, 379 U.S. 306 (1964), sin embargo, el Tribunal Supremo federal <u>no</u> siguió la norma expresada en *Reisinger*. En este caso se trataba de unos hechos que, anterior a la aprobación de la Carta de Derechos Civiles de 1964, 78 Stat. 241, eran considerados, por leyes estatales, como actos delictivos.[10] Los acusados en este caso fueron convictos por violación a la ley estatal antes de la aprobación de la Carta de Derechos. Las convicciones fueron apeladas en las cortes supremas estatales y fueron confirmadas por los referidos foros. Presentada la controversia ante el Tribunal Supremo de los Estados Unidos,

---

[9] Así, por ejemplo, en <u>United States</u> v. <u>Chambers</u> 291 U.S. 217 (1934) a la pág. 223, el Tribunal Supremo de los Estados Unidos expresó:

> "In a case a statute is repealed or rendered
> inoperative, no further proceedings can be had to
> enforce it in pending prosecutions <u>unless</u>
> <u>competent authority has kept the statute alive</u>
> <u>for that purpose</u>."(Énfasis nuestro).

[10] Las disposiciones penales estatales en cuestión disponían que si una persona permanecía en un establecimiento comercial luego de que el dueño o encargado de dicho establecimiento le hubiese pedido que lo abandonara, dicho acto de resistencia constituía un delito.

los acusados alegaron que bajo la Carta de Derechos Civiles,
la conducta por la cual fueron acusados y convictos, no
constituía delito alguno, ni estatal ni federal, por lo cual
la aprobación de la misma tenía el efecto de suprimir los
procedimientos criminales en su contra.[11] El más alto
Tribunal resolvió que, en efecto, la aprobación de la Carta
de Derechos Civiles tenía el efecto de suprimir las
convicciones de los acusados. El referido foro indicó que la
Carta de Derechos Civiles creaba unos derechos estatutarios
federales que le garantizaban a toda persona estar libre de
discrimen en establecimientos comerciales. Dicho estatuto
proveía para que el acto de intentar recibir servicio en
establecimientos comerciales de forma pacífica --actos por
los cuales fueron acusados los apelantes-- fuese

---

[11] La sección 201 (a) de la Carta de Derechos, pertinente al
caso ante la consideración del Tribunal dispone que:

> "(a)ll persons shall be entitled to the full and
> equal enjoyment of the goods, services,
> facilities, privileges, advantages, and
> accommodations of any place of public
> accommodation…" (citas omitidas).

Por su parte, la sección 203 de la Carta de Derechos expresa
lo siguiente siguiente:

> No person shall (a) withhold, deny, or attempt to
> withhold or deny, or deprive or attempt to
> deprive, any person of any right or privilege
> secured by section 201 or 202, or (b) intimidate,
> threaten, or coerce, or attempt to intimidate,
> threaten, or coerce any person with the purpose
> of interfering with any right or privilege
> secured by section 201 or 202, or (c) punish or
> attempt to punish any person for exercising or
> attempting to exercise any right or privilege
> secured by section 201 or 202.

descriminalizado. Al analizar la intención legislativa al aprobar esta medida el Tribunal expresó que el historial legislativo demostraba que la Carta de Derechos podía utilizarse como una defensa contra leyes estatales que prohibían que una persona se beneficiara de los <u>derechos constitucionales</u> garantizados por ésta.

Por consiguiente, el referido Tribunal resolvió que la cláusula de reserva federal no podía impedir la supresión de los procedimientos criminales iniciados contra los acusados ya que se había sustituido un "crimen por un derecho" y toda vez que la continuación de los procedimientos sería un acto inconstitucional. A estos efectos expresó el Tribunal Supremo que:

> "Rather than a retroactive intrusion into state criminal law this is but the application of a long-standing federal rule, namely, that since the Civil Rights Act <u>substitutes a right for a crime</u> any state statute, or its application, to the contrary must by virtue of the Supremacy Clause give way under the normal abatement rule covering pending convictions arising out of a pre-enactment activity. The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history. This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act." Ibid, pág. 315. (Énfasis nuestro).

En consecuencia, el Tribunal Supremo aplicó las disposiciones de la Carta de Derechos Civiles de forma retroactiva y ordenó la desestimación de los cargos contra los acusados. A estos efectos enfatizó que, la aplicación retroactiva de la ley en este caso se hacía clara toda vez

que la Carta de Derechos Civiles no contenía, en sí misma, una cláusula de reserva. Sobre el particular, el referido foro expresó:

> "[f]uture state prosecutions under the Act being unconstitutional <u>and there being no saving clause in the Act itself</u>, convictions for pre-enactment violations would be equally unconstitutional and abatement necessarily follows". Ante, a la pág. 315. (Énfasis nuestro).

Este caso constituye una <u>excepción</u> a la normativa establecida por el Tribunal Supremo en *Reisinger* que resuelve que las cláusulas de reserva tienen el propósito de impedir que la aprobación de nuevas leyes penales tengan el efecto de suprimir los procesamientos penales iniciados bajo la vigencia de la antigua ley porque aquí se trataba de una conducta que, aunque anteriormente era delictiva, ahora constituía un <u>derecho</u> protegido por la Constitución federal.

Siguiendo la normativa establecida en *Reisinger*, ante, en <u>Bradley</u> v. <u>United States</u>, 410 U.S. 605 (1973), al analizar la posibilidad de aplicar una ley penal más favorable de forma retroactiva, <u>el Tribunal Supremo de los Estados Unidos resolvió que si la mencionada ley contenía en sí misma una cláusula de reserva, ésta debía prevalecer ya que la misma  expresaba la intención legislativa de que la ley en cuestión sólo tuviese aplicación prospectiva</u>[12]. En

---

[12] La sección 1103(a) de referida disposición estatutaria dispone:
> "Prosecutions for any violation of law occurring prior to the effective date of (the Act) shall not be affected by the repeals or amendments made by (it) . . . or abated by reason thereof." (citas omitidas).

este caso, los apelantes fueron acusados por violación al Título 26 U.S.C. sección 7237(b) (conspirar para vender cocaína). La sección 7237(d) de esta Ley disponía que las sentencias impuestas bajo la sección 7237(b) no podían ser suspendidas y que los sentenciados bajo la misma no cualificaban para recibir libertad bajo palabra. Posterior a la convicción, pero anterior a la imposición de la sentencia, se aprobó el Comprehensive Drug Abuse Prevention and Control Act de 1970, ante, el cual dejó sin efecto la disposición que prohibía que los acusados, bajo los hechos cometidos por los apelantes, cualificaran para disfrutar de libertad bajo palabra. Tanto el tribunal de distrito como el tribunal apelativo se negaron a aplicar las disposiciones más favorables de la nueva ley.

El foro apelativo, tomando en consideración tanto la cláusula de reserva federal contenida en el 1 U.S.C. sec 109, como la cláusula de reserva contenida en la sección 1103(a) del *Comprehensive Drug Abuse Prevention and Control Act*, ante, resolvió que dichas disposiciones requerían que los hechos cometidos antes de dicha ley fuesen procesados conforme a la ley vigente al momento de su comisión. En otras palabras, que bajo las cláusulas de reserva, aun cuando una ley penal hubiese sido derogada por una posterior el mandato legislativo era a los efectos de que la ley derogada aplicase como si todavía estuviese vigente. El Tribunal Supremo de los Estados Unidos confirmó la sentencia del foro apelativo; resolvió que la cláusula de reserva

federal y la específica, contenida en la nueva ley, impedían que el tribunal de distrito pudiese aplicar las disposiciones más benignas de ésta por lo cual el referido foro tenía que aplicar la ley vigente al momento de la comisión de los hechos.

De este modo, el Tribunal Supremo de los Estados Unidos reconoció que si una nueva ley penal --que derogue o enmiende una ley penal anterior-- contiene, en sí misma, una cláusula de reserva específica, ésta debe prevalecer ya que tiene el propósito de impedir que las disposiciones de la misma sean aplicadas a hechos cometidos antes de su vigencia.

En Warden v. Marrero, 417 U.S. 653 (1974), al igual que en *Bradley*, estaba en controversia la aplicación retroactiva de las disposiciones más favorables del *Comprehensive Drug Abuse Prevention and Control Act*, ante. En este caso, el tribunal de distrito resolvió que las cláusulas de reserva contenidas en el artículo 1103(a) de la referida disposición estatutaria y en el Título 1 U.S.C. 109, impedían que esta ley aplicase de forma retroactiva. Sin embargo, el foro apelativo intermedio revocó esta determinación y resolvió que las mencionadas disposiciones estatutarias no podían interpretarse de modo que se mantuviese la prohibición de la elegibilidad para recibir libertad bajo palabra cuando la nueva ley, claramente, había derogado dicha disposición. El Tribunal Supremo de los Estados Unidos revocó la determinación del foro apelativo. El Supremo federal, al

expresarse acerca del alcance de la cláusula de reserva general indicó que dicha disposición tuvo el efecto de abolir la presunción en el *common law* de que la derogación de un estatuto criminal resultaba en la supresión (*abatement*) de todos los procesamientos bajo el mismo que aun no fuesen finales y firmes en el último foro autorizado para revisarlos. [13] En particular, el referido Tribunal expresó:

> In consequence, the saving clause has been held to <u>bar</u> application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense. Ibid, pág. 661.

El Tribunal Supremo resolvió que al aplicar la cláusula de reserva federal la disposición legal derogada, sección 7237(d), "sobrevivía" tal derogación y debía ser aplicada --como si todavía estuviese en vigor-- a todos los hechos cometidos bajo su vigencia aun cuando la nueva ley resultase en un tratamiento más favorable para el acusado. Ante los argumentos de los peticionarios en cuanto a que la nueva ley reflejaba la intención del Congreso de aminorar la pena de una conducta y que por tanto, ésta debía tener aplicación retroactiva, el Tribunal Supremo expresó:

> Undeniably this argument has force, but it is addressed to the wrong governmental branch. Punishment for federal crimes is a matter for Congress, <u>subject to judicial veto only when the legislative judgment oversteps constitutional bounds</u>. Ibid, pág. 664.

---

[13] Citando a <u>Bradley</u> v. <u>United States</u>, ante y a <u>Bell</u> v. <u>Maryland</u>, 378 U.S. 226 (1964).

Conforme lo anteriormente expuesto <u>podemos concluir que la jurisprudencia del Tribunal Supremo de los Estados Unidos ha reconocido, en lo referente a las cláusulas de reserva, que las mismas, al neutralizar la doctrina de la supresión, impiden que una nueva ley penal que resulte ser más favorable a un acusado, convicto o sentenciado, sea aplicada de forma retroactiva, aun cuando la nueva ley derogue o enmiende una ley anterior</u>; lo que a su vez, supone mantener vigentes las disposiciones legales que regían unos actos delictivos sin tomar en consideración que las mismas hubiesen sido derogadas o enmendadas por una ley penal posterior más favorable. Conforme a ello, la intención legislativa deberá prevalecer siempre y cuando ésta no sobrepase los límites constitucionales.

### III

**A. Cláusulas de reserva en el Código Político de Puerto Rico.**

Al igual que el derecho penal norteamericano, nuestro derecho estatutario también contempla cláusulas de reserva generales que aseguran la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el período en que las mismas estuvieron formalmente vigentes; <u>esto es, las referidas cláusulas tienen idéntico propósito que las cláusulas de reserva norteamericanas.</u>

En Puerto Rico, las cláusulas de reserva se incorporaron, originalmente, en el Código Político. En el

referido cuerpo legal hay dos cláusulas de reserva. Una está contenida en el en el Artículo 44, 2 L.P.R.A. sec. 252; la otra la encontramos en el Artículo 386, 2 L.P.R.A. sec. 253.

El Artículo 44, ante, dispone que:

La revocación de una ley creando un delito, no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido con infracción de la ley así revocada, a menos que no se declare expresamente en la ley derogatoria el propósito de impedir tal persecución o castigo.

Por su parte, el Artículo 386, ante, establece que:

La derogación de cualquier estatuto por la Asamblea Legislativa no tendrá el efecto de exonerar o eximir de ninguna pena, embargo, confiscación o responsabilidad en que se hubiere incurrido bajo dicho estatuto, a menos que la ley derogatoria así lo dispusiere expresamente, y se tendrá por vigente dicho estatuto, al objeto de sostener la respectiva acción o proceso para exigir el cumplimiento de dicha pena, embargo, confiscación o responsabilidad.

La jurisprudencia interpretativa de estas cláusulas, de parte nuestra, ha sido un tanto contradictoria. Mientras que en algunas decisiones este Tribunal ha aplicado una ley penal más favorable, independientemente de las cláusulas de reserva dispuestas por el Código Político, en otras, se le ha dado plena eficacia a las mismas.[14]

Es de notar, sin embargo, que en Pueblo v. Tribunal de Distrito, 70 D.P.R. 678 (1949) reconocimos que nuestra ley general de reserva es sustancialmente igual a la cláusula de reserva general contenida en los Estatutos Revisados de los

---

[14] Véase, por ejemplo: Pueblo v. Velázquez, 35 D.P.R. 599 (1926); Pueblo v. Valentín, 33 D.P.R. 40 (1924); Pueblo v. Rodríguez, 50 D.P.R. 36 (1936); Pueblo v. Otero; 61 D.P.R. 36 (1942).

Estados Unidos, (1 U.S.C. 109), y expresamos que si la legislatura, al derogar una ley, quiere que cesen las causas pendientes por infracción a la ley derogada, bien puede manifestarlo en la ley derogatoria, ya expresa o implícitamente, cuando de la ley misma surja que fue su propósito que no se aplicase la ley general de reserva. Ibid.

Indicamos, en dicho caso [15], que la jurisprudencia norteamericana había expresado que la cláusula de reserva federal debía ser aplicada, a menos que por declaración expresa o por necesaria inferencia, que surgiera de los términos de la ley misma considerada en su totalidad, resultara que se frustraría la intención de la legislatura, si hubieran de aplicarse las disposiciones de la misma.[16]

En <u>Pueblo</u> v. <u>Álvarez Torres</u>, 127 D.P.R. 830 (1991) <u>nos enfrentamos a la situación particular de casos pendientes de procesamiento en que la ley penal, bajo la cual se procesan los mismos, es derogada por la Asamblea Legislativa</u>. En este

---

[15] Citando a <u>Hertz</u> v. <u>Woodman</u>, 218 U.S. 205 (1910).

[16] En este caso, la ley enmendatoria no contenía ninguna disposición en que de forma expresa o implícita surgiera la intención de la legislatura de excluir la cláusula de reserva contenida en el Artículo 44 del Código Político, ante. Sin embargo, resolvimos que no teníamos duda de que la intención de la Legislatura, al aprobar la ley en cuestión, fue que se archivaran las causas pendientes ya que de su historial legislativo surgía, de modo expreso, que el propósito de ésta fue eliminar las causas pendientes y dar a todo el que no hubiere cumplido con ésta amplia oportunidad de acatarla. Por esta razón, resolvimos que bajo estas circunstancias, las cláusulas de reserva generales no eran de aplicación.

caso la Ley Núm. 34 de 19 de junio de 1987, 34 L.P.R.A. secs. 2204 y 2215[17], por la cual sería procesado dicho menor, había expirado por mandato legislativo. Entre este momento y la aprobación de la nueva Ley Núm. 14 de 29 de junio de 1989, 34 L.P.R.A. secs. 2204 y 2215 [18] , hubo un vacío estatutario. La controversia del caso giraba en torno a si la derogación de la Ley anterior, vigente al momento de la comisión de los hechos, impedía que el Ministerio Público continuare con el procesamiento, como adulto, del recurrido. Allí expresamos que en las jurisdicciones estatales norteamericanas, la derogación --sin una cláusula de reserva o salvedad (*savings clause*) respecto a los casos pendientes-- de un estatuto penal por un organismo legislativo tenía, como regla general, el efecto de despojar al Estado del poder de continuar adelante con un procedimiento o proceso criminal pendiente ante los tribunales[19]. Ibid. Sin embargo, resulta importante destacar que en dicho caso señalamos que, en nuestras decisiones anteriores, habíamos resuelto que si la Asamblea Legislativa, al derogar una ley penal, interesaba impedir el procesamiento criminal bajo la misma

---

[17] La Ley Núm. 34, ante, privaba de autoridad al Tribunal Superior, Asuntos de Menores, en relación con hechos constitutivos de asesinato y delitos relacionados alegadamente cometidos por menores de catorce (14) años o más.

[18] La Ley Núm. 14, ante extendía el término de vigencia de la Ley Núm. 34, ante por dos (2) años adicionales.

[19] A estos efectos citamos a: Singer, Sutherland Stat. Const. Secs. 23.28-29 (4ta ed.); Witkin & Epstein, California Criminal Law, 2da ed., San Francisco, Bancroft Whitney Co., 1988, Vol. I, Sec. 69, pág. 87.

de todo caso pendiente ante los tribunales a la fecha de la derogación, ésta venía en la obligación de así manifestarlo expresamente; de lo contrario, la derogación de la ley no constituiría impedimento alguno para que los procedimientos judiciales pendientes continuaran adelante.[20]

En resumen, en Álvarez Torres resolvimos que la aprobación de la Ley Núm. 14 de 1989, ante, no tuvo el efecto de alterar, afectar, o de alguna forma terminar, los procedimientos penales comenzados contra menores de edad, mayores de catorce (14) años, que hubieran sido acusados del delito de asesinato, y delitos relacionados, al amparo de las disposiciones de la antes citada Ley Núm. 34 de 1987; sino todo lo contrario. Indicamos que el propósito e intención legislativa fue el de conservar el estado de derecho vigente bajo la mencionada Ley Núm. 34. Por tal razón, resolvimos que no existiendo en cuanto a la Ley en cuestión, una manifestación expresa por parte de la Asamblea Legislativa limitativa de la facultad general que le concede al Estado los Artículos 44 y 386 del Código Político, ante, no había razón válida alguna por la cual el Ministerio Fiscal no pudiese continuar adelante con el procesamiento del recurrido bajo las disposiciones de la Ley Núm. 34 de 1987, ante.

---

[20] Pueblo v. Álvarez Torres, ante, a la pág. 839; Pueblo v. Tribunal Superior, 84 D.P.R. 140, (1961); Pueblo v. Tribunal de Distrito, 70 D.P.R. 678 (1949); Pueblo v. Arecco, 67 D.P.R. 322 (1947).

De toda la discusión anterior, podemos concluir que las cláusulas de reserva del Código Político de Puerto Rico, al igual que la cláusula de reserva federal aprobada por el Congreso de los Estados Unidos, tuvieron como propósito obtener la continuación de estatutos derogados o enmendados de modo que estos aplicasen con pleno vigor en lo que respecta a conducta delictiva realizada durante su vigencia.

**B. Cláusulas de reserva en el Código Penal de 1974**

Al aprobar el Código Penal de 1974 y derogar el Código Penal de 1902, el legislador --aun cuando adoptó el principio de favorabilidad del derecho continental en su Artículo 4, mediante el cual las disposiciones penales aprobadas con posterioridad a unos hechos debían aplicar de forma retroactiva si las mismas eran más favorables-- incorporó a este nuevo cuerpo legal las cláusulas de reserva norteamericanas que también se habían incorporado en los códigos penales estatales. Al establecer las mismas, se advirtió la intención del legislador de imponer limitaciones a este principio de favorabilidad. En virtud de ello, el propio Código Penal de 1974, mediante cláusulas de reserva, no condicionó su vigencia al principio de favorabilidad establecido en su Artículo 4, sino que mantuvo la vigencia de las disposiciones del Código de 1902.

Las cláusulas de reserva del Código Penal de 1974 están constituidas en sus artículos 281 y 282, 33 L.P.R.A. secs. 4625 y 4626.

El Artículo 281 dispone que:

La promulgación de este Código no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal.

Por su parte, el Artículo 282 dispone que:

Las disposiciones del Artículo 4 de este Código se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia.

El Código Penal de 1974 estableció, en su Artículo 281, un mandato de aplicación preteractiva de las leyes penales preexistentes, independientemente del efecto favorable o desfavorable de dicho mandato, y, con el propósito de evitar que la introducción del principio de favorabilidad contrarrestara ese mandato, estableció además en su artículo 282 una prohibición de aplicación retroactiva del artículo 4. Bascuñán, op. cit. pág. 74. En otras palabras, mediante el Artículo 282 del Código Penal de 1974 se impidió que un acusado pudiese utilizar el Artículo 4 para invocar las disposiciones más favorables de ese cuerpo legal.

Varias de las decisiones de este Tribunal, ante controversias sobre la aplicación del principio de favorabilidad, interpretaron las cláusulas de reserva del Código Penal de 1974 en este sentido. Así, por ejemplo, en el caso de Pueblo v. Rosso Vázquez, 105 D.P.R. 905 (1977), el acusado había resultado convicto por hechos cometidos bajo la vigencia del derogado Código Penal de 1902. Bajo el mismo, la penalidad impuesta no tenía límite máximo mientras

que el Código Penal de 1974 fijaba un límite máximo de 25 años de reclusión. En este caso no aplicamos las disposiciones más favorables en cuanto a la pena del Código Penal de 1974 de forma retroactiva ya que los hechos delictivos y la sentencia por los mismos había sido dictada con anterioridad a la entrada en vigor del Código Penal de 1974. En este caso expresamos que, aun cuando en su tercer párrafo el Artículo 4 disponía que si durante la condena se aprobare una ley más benigna la misma se limitará a lo establecido por ella, lo ordenado por este cuerpo legal en su Artículo 282 hacía que la nueva ley fuese inaplicable ya que la sentencia había sido dictada antes de la fecha de vigencia del Código Penal de 1974 y el referido Artículo 282 disponía que la aplicación de éste fuese prospectiva, para delitos cometidos con posterioridad a su vigencia.

Ello no obstante, en Pueblo v. Caballero Rodríguez, 109 D.P.R. 126 (1979), resolvimos en forma contraria; aplicamos en el mismo el mandato del Artículo 4 del Código Penal de 1974, el cual apuntaba hacia la aplicación retroactiva de la ley más favorable. En este caso estaba en controversia si el Artículo 33 del Código Penal de 1974 era una disposición más benigna por lo cual debía aplicar ésta y no la disposición del Artículo 41 del Código Penal de 1902. Al responder en la afirmativa, expresamos que por entender que la disposición vigente --el Artículo 33 del Código de 1974-- era más benigna que el Artículo 41 del Código anterior y en obediencia al citado Artículo 4 del Código vigente, a ella

nos atendríamos. No obstante en este caso, aun cuando estaba en controversia la aplicación retroactiva de un Artículo del Código Penal de 1974 a hechos cometidos anterior a su vigencia, no hicimos referencia alguna a las cláusulas de reserva específicas contenidas en los Artículos 281 y 282 de este Código.

En Pueblo v. Moreno Morales I, 132 D.P.R. 261 (1992) el apelante solicitó le fuesen aplicadas las disposiciones más benignas de la Ley 100 de 4 de junio de 1980, 34 L.P.R.A. sec. 1044, aprobada con posterioridad a la comisión de los hechos, en armonía con el Artículo 4 del Código Penal. En este caso, no obstante lo resuelto en Pueblo v. Caballero Rodríguez, ante, resolvimos que las disposiciones del Artículo 4 del Código Penal, conforme con el Artículo 282, ante, se aplicarían con carácter prospectivo, a partir de la fecha de su vigencia. En vista de que, la sección 4 de la Ley Núm. 100, ante, disponía que la misma comenzaría a regir nueve meses después de su aprobación, y que sus disposiciones serían aplicables a personas a ser juzgadas por hechos delictivos que se cometieran a partir de la fecha de su vigencia resolvimos que, habiendo ocurrido los hechos delictivos antes de la vigencia de esa ley, a éstos no le eran aplicables las disposiciones más benignas de la Ley Núm. 100, ante, de forma retroactiva en virtud del Artículo 282 del Código Penal, ante y de la disposición de la misma Ley a los efectos de que ésta sólo tuviese aplicación

prospectiva. [21] De este modo, reconocimos también la validez de lo que pueda establecer una cláusula de reserva contenida en una ley penal especial en cuanto a su aplicación retroactiva.

De la discusión jurisprudencial anterior --la cual, no hay duda, ha sido conflictiva-- surge que en nuestra jurisdicción se han interpretado las cláusulas de reserva del Código Penal de 1974 como una manifestación expresa del legislador a los efectos de impedir la aplicación retroactiva de una ley, aun cuando ésta resulte ser más beneficiosa para un acusado. Por consiguiente, es razonable concluir que, en nuestra jurisdicción, la aprobación de cláusulas de reserva opera como una limitación al principio

_____

[21] De igual forma, este Tribunal emitió una Resolución en el caso de Pueblo v. Villafañe Fabián, 124 D.P.R. 839 (1997), en la cual denegamos la moción de reconsideración presentada por los apelantes alegando que debíamos aplicar las disposiciones de la Resolución Conjunta Núm. 514 aprobada por la Asamblea Legislativa en la que se les concedía un (1) año de moratoria a los profesionales de la Naturopatía para que éstos pudieran continuar con su práctica sin estar sujetos a ser procesados en lo criminal por ejercicio ilegal de la medicina durante ese período. En dicha resolución --aun cuando analizamos el principio de favorabilidad contenido en el Artículo 4-- dispusimos que la referida disposición estatutaria no tendría aplicación retroactiva y confirmamos las condenas impuestas a los apelantes por el delito de práctica ilegal de la medicina. Indicamos, que la mencionada Resolución Conjunta no estaba vigente al momento de imponer la sentencia a los acusados y que lo decisivo al determinar la aplicación de la ley era la fecha en que fue dictada la sentencia del tribunal de instancia, a tono con lo resuelto en Pueblo v. Rosso Vázquez, ante. Señalamos, además, que la Asamblea Legislativa, al aprobar la disposición en cuestión, nada dispuso con respecto a que la nueva ley tuviese efecto retroactivo y que si el legislador hubiera querido extender el beneficio de la moratoria a los apelantes, así lo hubiere dicho expresamente, o le hubiere dado fecha de vigencia retroactiva.

de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador.

IV

El presente caso requiere que acometamos la encomienda de resolver si a unos hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974, le son de aplicación --de forma retroactiva-- las disposiciones del nuevo Código Penal de 2004. Esto requiere, a su vez, que resolvamos si mediante las disposiciones del Artículo 308 del Nuevo Código Penal el legislador impidió su aplicación retroactiva en todo aquello que beneficiara al acusado.

La aprobación de un nuevo Código Penal mediante la Ley Núm. 149 de 18 de junio de 2004, tuvo el efecto de derogar el Código Penal de 1974. En lo pertinente al presente caso, este nuevo cuerpo legal dispone, en su Artículo 8, que la ley penal aplica a hechos realizados durante su vigencia[22].

Por otro lado, el Artículo 9 dispone que:

La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley

---

[22] La vigencia del Código Penal de 2004 se define en el Artículo 314, el cual dispone que:

Este Código empezará a regir el 1 de mayo de 2005, con excepción de los Artículos 312 y 313.

más benigna en cuanto a la pena o a la medida de
seguridad o al modo de ejecutarlas, se aplicará
retroactivamente.
(c) Si durante el término en que la persona está
cumpliendo la sentencia entra en vigor una ley
que suprime el delito, o el Tribunal Supremo
emite una decisión que despenalice el hecho, la
pena quedará extinguida y la persona liberada, de
estar recluida o en restricción de libertad. En
estos casos los efectos de la nueva ley o de la
decisión judicial operarán de pleno derecho.

Las mencionadas disposiciones estatutarias tienen su origen, ambas, en el Artículo 4 del Código Penal derogado. El Artículo 8 formula la regla general de aplicación prospectiva de la ley penal, o la prohibición de leyes ex post facto, según requerido por el Artículo II sección 12 de nuestra Constitución. El Artículo 9 dispone --al igual que el Artículo 4 del anterior Código-- para la aplicación retroactiva de la ley penal más beneficiosa para el acusado, que sea aprobada al momento de su procesamiento o al imponerle sentencia o durante su condena. Dora Nevares Muñiz, Nuevo Código Penal de Puerto Rico, Comentado, Edición 2004-2005, Instituto para el Desarrollo del Derecho, Inc., págs. 9-10.

Tal y como señaláramos anteriormente, el principio de favorabilidad establece que si una ley penal es aprobada con posterioridad a la comisión de unos hechos delictivos, y los efectos de la misma resultan en un tratamiento más favorable para un acusado, ésta debe aplicarse de forma retroactiva, de modo que el acusado disfrute de los beneficios de la misma. Como también indicáramos previamente, el principio de

favorabilidad es una excepción al principio de que la ley aplicable a unos hechos es aquella vigente al momento de su comisión. Por tal razón, al analizar la aplicación retroactiva de una ley, hay que atender a la intención legislativa al aprobarla.

Según expresamos, el principio de favorabilidad tiene un rango meramente estatutario, por lo cual el legislador puede, legítimamente, imponer restricciones al mismo y ordenar expresamente la aplicación de leyes penales, que hubieren sido derogadas o enmendadas, siempre que las mismas hubieren estado vigentes al momento de la comisión de los hechos.

La profesora Nevares señala que, al momento de analizar si una nueva ley penal debe aplicarse de forma retroactiva, "se comparará la ley vigente al momento de cometer el delito con la ley nueva y si ésta es más beneficiosa se aplicará retroactivamente, excepto que una cláusula de reserva lo prohíba". Nevares Muñiz, op. cit. pág. 10. Al igual que el Código Penal de 1974 en sus Artículos 281 y 282, el Código Penal de 2004 contiene una cláusula de reserva. Por esta razón, los Artículos 8 y 9 del nuevo Código Penal tienen que interpretarse conjuntamente con la cláusula de reserva que constituye el Artículo 308. Ibid, pág. 390.

Tomando en cuenta la discusión anterior sobre la interpretación jurisprudencial de las cláusulas de reserva del Código Político y del Código Penal de 1974, atendemos,

específicamente, la cláusula de reserva adoptada por el legislador en el Artículo 308 del Código Penal de 2004.

La cláusula de reserva contenida en el Artículo 308 del nuevo Código dispone que:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Énfasis nuestro).

Conforme a la profesora Nevares [23], el propósito del referido Artículo, al establecer una cláusula de reserva, es que la conducta realizada con anterioridad a la vigencia del nuevo y vigente Código en violación a alguna disposición del Código Penal derogado, o cualquier otra ley especial de carácter penal, se regirá por las leyes vigentes al momento del hecho con la sola excepción, contemplada en el segundo párrafo del mencionado Artículo, la cual establece que si el Código suprime algún delito no se deberá encausar a la persona por ese delito y que cualquier acción en trámite deberá sobreseerse. Nevares Muñiz, op. cit. pág. 389. La referida autora, en su obra Derecho Penal Puertorriqueño, Parte General, Instituto para el Desarrollo del Derecho Puertorriqueño, Inc., 5ta edición revisada, (2005), expresa

---

[23] Asesora de la Asamblea Legislativa respecto al Código Penal de 2004.

que el efecto de una cláusula de reserva es permitir la ultra-actividad [24] de la ley derogada por hechos realizados durante su vigencia, excepto cuando se trate de la supresión un delito[25]. op.cit. pág. 106.

Se desprende, claramente, de una lectura del referido Artículo 308 que el legislador pretendió mantener la vigencia del Código Penal de 1974 para todos aquellos delitos cometidos bajo el mismo. A esos efectos, expresamente dispuso que estos delitos se regirían por la ley vigente al momento de su comisión, por lo cual no puede sostenerse que la intención legislativa fue que el nuevo Código tuviese aplicación retroactiva.

Es menester enfatizar que la redacción original de dicho artículo, según el Proyecto del Senado 2302, sí proveía expresamente para la aplicación retroactiva de aquellas disposiciones que resultaran en un tratamiento más favorable al imputado. El mismo disponía lo siguiente:

> La conducta realizada con anterioridad a la vigencia de este Código, en violación a las

---

[24] El término ultra-actividad utilizado por la profesora Nevares es cónsono con el término preteractividad utilizado por el profesor Bascuñán y se refiere, al igual que éste, a la aplicación de una ley penal a los hechos cometidos durante su vigencia aun cuando dicha ley hubiere sido enmendada o derogada.

[25] Conforme lo anterior, expresa la profesora Nevares que el Artículo 308 y el Artículo 9 atienden la situación en que la ley nueva quita carácter delictivo a un hecho anteriormente reprimido. En estos casos, el referido Artículo 308 dispone para la liberación de la persona y extinción de la acción penal, por lo cual las cláusulas de reserva del Código Político no aplicarían a partir de la vigencia del Código de 2004.

disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. <u>Sin embargo, todas las disposiciones de este Código le serán aplicables si resulta de dicha aplicación un tratamiento más favorable al imputado o al sentenciado</u>. Si este Código suprime algún delito no deberá iniciársele encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. (Énfasis nuestro).

La redacción original del Artículo 308, al disponer expresamente que las disposiciones del nuevo Código tuvieran efecto retroactivo en todo aquello que beneficiara al acusado, fue <u>objeto de preocupación</u> en los debates que antecedieron a la aprobación del nuevo Código Penal. De hecho, el Departamento de Justicia se opuso a ello.

La Comisión de lo Jurídico del Senado <u>enmendó</u> el referido Artículo. Sobre este particular, en el Informe de la referida Comisión se expresó que:

> Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. de la S. 2302 para que en el Artículo 30[8] <u>se elimine</u> la oración "[s]in embargo, las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado." <u>La intención del legislador es que este Código aplique a delitos cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito</u>. Informe de la Comisión de lo Jurídico del Senado de 22 de junio de 2003. (Énfasis nuestro).

Como vemos, el nuevo Código Penal contiene, <u>en sí mismo</u>, una cláusula de reserva en su Artículo 308, la cual responde a la <u>clara intención legislativa</u> de que la conducta

realizada durante la vigencia del Código Penal derogado se rija por este. <u>El efecto de dicha cláusula de reserva es que aquellos actos delictivos ocurridos durante la vigencia del derogado Código Penal se les debe aplicar dicho cuerpo legal como si el mismo todavía estuviese vigente.</u>[26]

V

Lo anterior, sin embargo, no dispone del todo de la controversia hoy ante nuestra consideración. Nos falta por considerar, y resolver, el planteamiento del peticionario González Ramos a los efectos de que, disponiendo el Artículo 308 del Código Penal de 2004 que la conducta delictiva ocurrida con anterioridad a su vigencia se regirá por las leyes vigentes al momento de la su comisión, ello significa

_____

[26] En reiteradas ocasiones, este Tribunal ha expresado que la obligación fundamental de los tribunales es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. Dicho de otra manera, el fin principal de la interpretación estatutaria es descubrir la intención del legislador y su propósito social para hacer que prevalezca este propósito y evitar interpretaciones que conduzcan a resultados irrazonables. Véase, Artículo 19 del Código Civil, 31 L.P.R.A. sec. 19; Véase además, <u>Otero de Ramos v. Díaz Saldaña</u>, res. el 14 de mayo de 2002, 2002 T.S.P.R. 65; <u>Irizarry v. Johnson and Johnson Consumer Products Co.</u>, 150 D.P.R. 155 (2000); <u>Piñero González v. A.A.A.</u>, 146 D.P.R. 890 (1998); <u>Dorante v. Wrangler</u>, 145 D.P.R. 408 (1998); <u>Chase Manhattan Bank v. Mun. de San Juan</u>, 126 D.P.R. 759 (1990).

En consecuencia, cuando el lenguaje de una ley es claro y la intención legislativa es patente, este Tribunal está obligado a respetar la voluntad legislativa. Los tribunales no pueden disponer algo que el legislador no intentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. <u>Raimundi, Meléndez v. Productora de Agregados</u>, res. el 21 de junio de 2004, 2004 TSPR 106; <u>Mun. de San Juan v. Bco. Gubernamental</u>, 140 D.P.R. 873 (1996); <u>Alejandro Rivera v. E.L.A.</u>, 140 D.P.R. 538 (1996).

que bajo las disposiciones del Artículo 4 del Código Penal de 1974, que establece que se debe aplicar la ley más favorable, debe aplicársele el nuevo Código de forma retroactiva. No le asiste la razón.

La interpretación lógica y razonable de todas las disposiciones estatutarias aquí en controversia es a los efectos de que la cláusula de reserva contenida en el Artículo 308 del Código de 2004, la cual constituye una limitación al principio de favorabilidad contenido en el Artículo 4 del Código de 1974, impide que el nuevo Código pueda ser aplicado retroactivamente como ley penal más favorable.

Ello así, ya que la disposición, a esos efectos, del Artículo 308 no viola precepto constitucional alguno ya que, según hemos expresado, el principio sobre la aplicación retroactiva de la ley penal más favorable no tiene rango constitucional, quedando dentro de la discreción del legislador la imposición de restricciones a este principio. Dicho de otra forma, la aplicación retroactiva del Código Penal en cuanto pueda favorecer al acusado queda dentro de la discreción de la Asamblea Legislativa, por lo cual el acusado peticionario en el presente caso no tiene un derecho constitucional a la aplicación retroactiva del mismo.

Resolvemos, en consecuencia, que la cláusula de reserva contenida en el Artículo 308 del Código Penal de 2004 impide que un acusado por hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974 pueda invocar

--vía el Artículo 4 del mismo[27]-- las disposiciones del nuevo Código Penal. En virtud de ello, <u>a todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal de 1974 les aplicará el referido cuerpo legal en su totalidad. Ello así, ya que la clara intención legislativa es a los efectos de que el nuevo Código Penal tenga, únicamente, aplicación prospectiva.</u>

Ahora bien, y como indicáramos anteriormente, constituye una <u>excepción</u> a lo anteriormente pautado la situación en que el nuevo código <u>suprime</u> un delito anteriormente vigente, situación contemplada en el segundo párrafo del citado Artículo 308. [28] Apoyándose en esta disposición, el peticionario González Ramos sostiene que procede el sobreseimiento estatutario de los cargos debido a

---

[27] De igual forma, la cláusula de reserva tuvo el efecto de impedir que un acusado utilizara las disposiciones del Artículo 9 del nuevo Código Penal, para que el mismo fuese aplicado a hechos cometidos anterior a su vigencia <u>ya que la intención legislativa fue que las disposiciones del referido Artículo sólo se aplicaran prospectivamente a partir de la vigencia del nuevo Código.</u>

[28] El segundo párrafo del referido Artículo 308 dispone que si algún delito quedase suprimido por el nuevo Código no se deberá encausar a la persona por ese delito, cualquier acción en trámite deberá sobreseerse y las sentencias condenatorias deberán declararse nulas. Ello responde a que cuando el Estado le quita el carácter de delito a un hecho que anteriormente era delictivo, ello es señal de que ya no tiene interés en castigarlo y por lo tanto, nadie deberá ser castigado por un hecho que según una ley posterior, no constituye delito. Dora Nevares, <u>Derecho Penal Puertorriqueño</u>, citando al tratadista Guiseppe Maggiore, <u>Derecho Penal</u>, Bogotá, Ed. Temis, 1961, Vol. I. pág. 199. Véase: <u>Pueblo</u> v. <u>O'neill Román</u>, res. el 5 de agosto de 2005, 2005 TSPR 108.

que el delito de asesinato estatutario quedó suprimido por el Código Penal de 2004. <u>No le asiste la razón</u>.

En primer lugar, las disposiciones a esos efectos del Código Penal del 2004 son diáfanamente claras. Por otro lado, la intención legislativa, o el historial legislativo, respecto a éste punto no da margen a duda alguna. A esos efectos, vale la pena destacar que en el Informe de la Comisión de lo Jurídico del Senado, respecto al P. del S. 2302, dicha Comisión específicamente hizo constar que con relación al Artículo 106, <u>se mantenía la figura del asesinato estatutario</u>, incorporándose, sin embargo, la exigencia de que el asesinato se cometiese como "consecuencia natural" de los delitos base que se mencionan. Específicamente, con relación a dichos delitos base, la Comisión expresó que en el referido Inciso (b) del Artículo 106 se mantenían los delitos base del asesinato estatutario, tipificado por el Artículo 83 del Código Penal de 1974, "simplificando el  nombre al correspondiente a los nuevos tipos que se proponen en este Código y añadiendo otros". *Ibíd.*

Como vemos, no hay duda de que el asesinato estatutario se mantiene tipificado en el nuevo Código. En otras palabras, la modalidad de asesinato estatutario <u>no</u> ha sido suprimida por el Código Penal de 2004; <u>meramente hubo un cambio en la terminología del delito --Artículo 106-- de asesinato estatutario</u>, lo cual, de ninguna forma significa que el asesinato estatutario no se encuentre codificado en el nuevo

Código de 2004. Siendo ello así, al peticionario González Ramos <u>no</u> le es aplicable la disposición del segundo párrafo del Artículo 308 en cuanto a los delitos suprimidos, <u>por lo que procede juzgar a éste por el referido delito bajo las disposiciones del Código Penal de 1974</u>.[29]

Al determinar que aplica el Código Penal de 1974 a los hechos ante nuestra consideración, no emitimos juicio alguno sobre los planteamientos del acusado con respecto a que el asesinato estatutario codificado en el nuevo Código Penal, constituye, o no, una ley penal más favorable.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[29] En vista de que en el presente caso, los hechos serán juzgados por el Código Penal de 1974, se hace innecesario discutir lo que constituye la frase "consecuencia natural", reservándonos dicha discusión para un caso futuro, en el que los hechos se cometan bajo la vigencia del nuevo Código Penal.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                        CC-2005-495        CERTIORARI

Alexander González Ramos

    Recurrente


                        SENTENCIA


        San Juan, Puerto Rico, a 16 de septiembre de 2005


        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado y se dicta Sentencia confirmatoria de la resolución emitida por el Tribunal de Apelaciones en el presente caso. Esto es, todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal de 1974 les aplicará el referido cuerpo legal en su totalidad. El Código Penal de 2004 tendrá únicamente aplicación prospectiva.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo